**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| GRIDDY ENERGY LLC, | § | Case No. 21-30923 (MI) |
| | § | |
| Debtor. | § | |
| | § | |
| RUSSEL F. NELMS, in his capacity as | § | |
| Plan Administrator of the Estate of | § | |
| GRIDDY ENERGY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 22-03315 |
| | § | |
| ELECTRIC RELIABILITY COUNCIL | § | |
| OF TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |

**ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S
MOTION TO DISMISS AND FOR ABSTENTION**

## TABLE OF CONTENTS

I. SUMMARY OF THE ARGUMENT ................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

 A. Factual Background ............................................................... 2

  1. The ERCOT Market and Texas Grid ................................................. 2

  2. Griddy's Role in the ERCOT Market ................................................. 4

 B. Procedural Background ........................................................... 5

III. ARGUMENTS AND AUTHORITIES ........................................................... 6

 A. The filed rate doctrine bars Griddy's claims ........................................... 6

 B. This Court should abstain from hearing any of Griddy's claims under
  *Burford v. Sun Oil Co.* ............................................................. 12

  1. Griddy's claims raise significant issues of Texas law. ................................. 13

  2. Griddy's claims require resolution of unsettled issues of Texas law .............. 14

  3. Texas has a uniquely important interest in the regulation of the
   ERCOT market. ................................................................... 15

  4. Texas's grid and energy market need a coherent policy. .............................. 16

  5. Texas has established a special state fora for judicial review ......................... 16

 C. Griddy's Complaint should be dismissed for failure to join an
  indispensable party ................................................................ 17

  1. Legal standard .................................................................... 17

  2. First prong: The PUCT's interest ................................................... 18

  3. Second prong: ERCOT's risk ...................................................... 20

  4. It is infeasible to join the PUCT under Rule 19(b). ................................. 20

 D. Certain Counts of Griddy's Complaint should be dismissed under Rule 12(b)(6).. 21

  1. Count 6 should be dismissed because Griddy has no legal right to recover the
   damages it seeks. ................................................................. 21

  2. Count 7 should be dismissed because Griddy fails to state a plausible
   negligence claim, the claim is barred by the economic loss rule, and Griddy
   limited its right to seek consequential damages ..................................... 24

   a. Griddy fails to state a plausible negligence claim. .............................. 24

   b. Griddy's negligence claim is barred by the economic loss rule. .......... 25

   c. Griddy agreed to limit its right to seek consequential damages against
    ERCOT. ...................................................................... 26

  3. Count 9 should be dismissed because Griddy fails to plead a plausible
   equitable subordination claim. ................................................... 26

i

4.    Count 10 should be dismissed because Griddy fails to plead plausible claims
      for unjust enrichment, assumpsit, and money had and received.....................27

IV.    CONCLUSION.................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                           **Page(s)**

*Ark. La. Gas Co. v. Hall,*
    453 U.S. 571 (1981)........................................................................................................7

*Basic Cap. Mgmt., Inc. v. Dynex Com., Inc.,*
    348 S.W.3d 894 (Tex. 2011)........................................................................................23

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC,*
    572 S.W.3d 213 (Tex. 2019)........................................................................................26

*Burford v. Sun Oil Co.,*
    319 U.S. 315 (1943)............................................................................................. *passim*

*In re Cajun Elec. Power Coop., Inc.,*
    119 F.3d 349 (5th Cir. 1997)........................................................................................27

*In re Clear the Air, LLC,*
    631 B.R. 286 (Bankr. S.D. Tex. 2021) ........................................................................11

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)......................................................................................................12

*Edminster, Hinshaw, Russ & Assocs., Inc. v. Downe Twp.,*
    953 F.3d 348 (5th Cir. 2020) ........................................................................................28

*Elephant Ins. Co., LLC v. Kenyon,*
    644 S.W.3d 137 (Tex. 2022)........................................................................................24

*In re Enron,*
    328 B.R. 75 (S.D.N.Y. 2005).............................................................................8, 9, 10

*Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel,*
    883 F.2d 890 (10th Cir. 1989) .....................................................................................21

*In re Entergy Corp.,*
    142 S.W.3d 316 (Tex. 2004) (orig. proceeding).................................................3, 16

*Entex, A Division of Noram Energy Corp. v. Gonzalez,*
    94 S.W.3d 1 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ........................24

*Exelon Generation Co. v. PUC,*
    No. D-1-GN-21-001772 (Tex. Dist. Ct., Travis Cnty. filed Apr. 19, 2021)...........14

*In re First All. Mortg. Co.,*
    471 F.3d 977 (9th Cir. 2006) ...................................................................................1, 27

*Ford v. Cimarron Ins. Co.*,
    230 F.3d 828 (5th Cir. 2000) ........................................................................................24, 25

*Fortune Prod. Co. v. Conoco, Inc.*,
    52 S.W.3d 671 (Tex. 2000)...................................................................................................28

*Griddy Energy LLC v. TXU Retail Energy Co. LLC*,
    No. 22-3025, 2022 WL 6795069 (Bankr. S.D. Tex. Oct. 6, 2022) (Isgur, J.) ..............1, 11, 22

*Hacienda Records, L.P. v. Ramos*,
    718 F. App'x 223 (5th Cir. 2018) ........................................................................................22

*Hoffman v. Hous. Soc'y for the Prevention of Cruelty to Animals (In re Hoffman)*,
    No. 16-3222, 2017 WL 727543 (Bankr. S.D. Tex. Feb. 23, 2017) (Isgur, J.),
    *aff'd*, No. H-17-2332, 2019 WL 2501556 (S.D. Tex. 2019), *aff'd*, 795 F.
    App'x 291 (5th Cir. 2020) ...................................................................................................22

*HS Res., Inc. v. Wingate*,
    327 F.3d 432 (5th Cir. 2003) ..........................................................................................17, 18

*In re iHeartMedia, Inc.*,
    597 B.R. 339 (Bankr. S.D. Tex. 2019) (Isgur, J.) .................................................................28

*Keogh v. Chi. & Nw. Ry. Co.*,
    260 U.S. 156 (1922)..............................................................................................................7

*Koerner v. Garden Dist. Ass'n*,
    78 F. App'x 960 (5th Cir. 2003) ..........................................................................................13

*Krempp v. Dobbs*,
    775 F.2d 1319 (5th Cir. 1985) .............................................................................................21

*Lee v. Anthony Lawrence Collection, L.L.C.*,
    47 F.4th 262 (5th Cir. 2022) ......................................................................................18, 20, 21

*Luminant Energy Co. v. PUC*,
    No. 03-21-00098-CV (Tex. App.—Austin filed March 2, 2021)..........................................14

*McIntosh v. Wiley*,
    No. 5:04-CV-120, 2006 WL 3691109 (S.D. Tex. Dec. 11, 2006).........................................28

*Medco Energi U.S., L.L.C. v. Sea Robin Pipeline Co., L.L.C.*,
    895 F. Supp. 2d 794 (W.D. La. 2012), *aff'd*, 729 F.3d 394 (5th Cir. 2013)...........................10

*MGA Ins. Co. v. Charles R. Chesnutt, P.C.*,
    358 S.W.3d 808 (Tex. App.—Dallas 2012, no pet.)..............................................................28

*Miss. Power & Light Co. v. Miss. ex rel. Moore*,
    487 U.S. 354 (1988) ........................................................................................................7

*Mood v. Kronos Prods., Inc.*,
    245 S.W.3d 8 (Tex. App.—Dallas 2007, pet. denied) ......................................23, 26

*Nat'l Cas. Co. v. Gonzalez*,
    637 F. App'x 812 (5th Cir. 2016) ..............................................................................18

*In re OCA, Inc.*,
    552 F.3d 413 (5th Cir. 2008) .....................................................................................23

*Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*,
    546 S.W.3d 133 (Tex. 2018) ......................................................................................16

*Patino v. Complete Tire, Inc.*,
    158 S.W.3d 655 (Tex. App.—Dallas 2005, pet. denied) ............................................24

*Pub. Util. Dist. No. 1 v. Dynegy Power Mktg., Inc.*,
    384 F.3d 756 (9th Cir. 2004) .......................................................................................8

*Pulitzer-Polster v. Pulitzer*,
    784 F.2d 1305 (5th Cir. 1986) ...................................................................................18

*R&K Fabricating, Inc. v. Frost Nat'l Bank (In re R&K Fabricating, Inc.)*,
    No. 12-03177, 2013 WL 1292645 (Bankr. S.D. Tex. Mar. 27, 2013) (Isgur, J.) ...................25

*Rothstein v. Balboa Ins. Co.*,
    794 F.3d 256 (2d Cir. 2015)............................................................................7, 8, 9, 11

*Schutten v. Shell Oil Co.*,
    421 F.2d 869 (5th Cir. 1970) .....................................................................................21

*Sierra Club v. City of San Antonio*,
    112 F.3d 789 (5th Cir. 1997) .......................................................................13, 15, 16

*Supreme Beef Packers, Inc. v. Maddox*,
    67 S.W.3d 453 (Tex. App.—Texarkana 2002, pet. denied) .......................................24

*Tex. Com. Energy v. TXU Energy, Inc.*,
    No. C-03-249, 2004 WL 1777597 (S.D. Tex. June 24, 2004), *aff'd*, 413 F.3d
    503 (5th Cir. 2005)................................................................................................9, 10

*Tex. Com. Energy v. TXU Energy, Inc. ("TCE")*,
    413 F.3d 503 (5th Cir. 2005) ................................................................................7, 8, 9

*Tex. Dep't of Pub. Safety v. Salazar*,
    304 S.W.3d 896 (Tex. App.—Austin 2009, appeal dismissed)...................................19

*Tex. Gen. Indem. Co. v. Tex. Workers' Compensation Comm'n,*
  36 S.W.3d 635 (Tex. App.—Austin 2000, no pet.) ................................................19

*Town of Norwood v. New England Power Co.,*
  202 F.3d 408 (1st Cir. 2000) ..................................................................................8

*In re Toyota of Jefferson, Inc.,*
  14 F.3d 1088 (5th Cir. 1994) ................................................................................11

*In re Ultra Petro. Corp.,*
  28 F.4th 629 (5th Cir. 2022) ...................................................................................8

*In re United States Abatement Corp.,*
  39 F.3d 556 (5th Cir. 1994) .............................................................................26, 27

*Util. Choice, L.P. v. TXU Corp.,*
  No. Civ. A-H-05-573, 2005 WL 3307524 (S.D. Tex. Dec. 6, 2005) .......................8

*Villarreal v. First Presidio Bank,*
  744 F. App'x. 204 (5th Cir. 2018) ........................................................................28

*Whalen v. Carter,*
  954 F.2d 1087 (5th Cir. 1992) ..............................................................................18

*Wilson v. Valley Elec. Membership Corp.,*
  8 F.3d 311 (5th Cir. 1993) ........................................................................... *passim*

*Winn v. Alamo Title Ins. Co.,*
  No. A-09-CA-214-SS, 2009 WL 7099484 (W.D. Tex. May 13, 2009) ..............7, 10

**Statutes**

11 U.S.C. § 503 ............................................................................................................5, 10

Tex. Gov't Code § 2001.038 ....................................................................................17, 19

Tex. Gov't Code § 2001.176 .........................................................................................17

Tex. Util. Code § 11.007 ..............................................................................................17

Tex. Util. Code § 31.001 .......................................................................................2, 3, 15

Tex. Util. Code § 39.001 ..............................................................................................17

Tex. Util. Code § 39.110 ..............................................................................................23

Tex. Util. Code § 39.151 .....................................................................................3, 15, 20

**Other Authorities**

16 Tex. Admin. Code § 25.43 ........................................................................................22, 25, 26

16 Tex. Admin. Code § 25.501 ...................................................................................................3

Fed. R. Bankr. P. 7012 ...............................................................................................................1

Fed. R. Civ. P. 12 ............................................................................................................. *passim*

Fed. R. Civ. P. 19 ..............................................................................................17, 18, 20, 21

Pursuant to Federal Rule of Civil Procedure 12, as applied by Federal Rule of Bankruptcy Procedure 7012, Defendant Electric Reliability Council of Texas, Inc. ("ERCOT") moves to dismiss Plaintiff's Original Complaint [Dkt. 1] filed by Plaintiff Russell F. Nelms, in his capacity as Plan Administrator of the Estate of Griddy Energy LLC ("Griddy").[1]

## I.     SUMMARY OF THE ARGUMENT

1.     Counts 1 through 8 and 10 should be dismissed under any of three threshold legal principles that preclude their adjudication. First, each of these counts must be dismissed under the filed rate doctrine. Griddy's adversary proceeding is premised on the pervading theme that the $9,000/MWh price was illegal and "absurdly inflated," and each of these counts attack the rate or seek relief requiring the Court to determine the fair value of electricity. The filed rate doctrine bars these counts and the relief sought.

2.     Second, the Court must abstain from the proceeding for similar reasons. Griddy's claims center on whether ERCOT should have charged a different rate for wholesale electricity during Winter Storm Uri (the "Storm"). Griddy challenges ERCOT's conduct under the Protocols, which are market rules with the force and effect of state law,[2] and the Standard Form Market Participant Agreement ("SFA"), an agreement created by, and part of, the Protocols which governs the relationship between ERCOT and *all* market participants. Because the State of Texas has a comprehensive and complex regulatory regime regarding wholesale electricity, this Court should abstain from deciding these issues.

---

[1] By filing this Motion, ERCOT does not consent to this Court's entry of any final orders or judgments in this adversary proceeding or the conduct of any jury trial before this Court in this adversary proceeding. Nothing in this Motion constitutes any such consent or prejudice to ERCOT's right to have all matters in this adversary proceeding heard by the District Court.

[2] *Griddy Energy LLC v. TXU Retail Energy Co. LLC*, No. 22-3025, 2022 WL 6795069, at *3 n.1 (Bankr. S.D. Tex. Oct. 6, 2022) (Isgur, J.).

3.      Third, Counts 1 through 8 and 10 should also be dismissed for failure to join an indispensable party, the Public Utility Commission of Texas ("PUCT"). Because these counts challenge an electricity rate ordered by the PUCT, the PUCT has an important interest under state law in this proceeding that it cannot protect as a nonparty. Indeed, state law *requires* the PUCT to be a party to any challenge to the validity or applicability of the PUCT rules. Additionally, in the absence of the PUCT, ERCOT may become subject to multiple or inconsistent obligations.

4.      Finally, certain counts should be dismissed under Rule 12(b)(6) for failure to state a claim. Count 6 should be dismissed because the damages Griddy seeks for ERCOT's alleged breach of contract are not recoverable contract damages and are precluded by the SFA and Texas law. Count 7 should be dismissed because Griddy fails to state a plausible negligence claim, the claim is barred by the economic loss rule; and the SFA forecloses the availability of consequential damages. Count 9 should be dismissed because Griddy fails to meet the Fifth Circuit's strict standard for bringing an equitable subordination claim. And Count 10 should be dismissed because Griddy fails to plead plausible claims for unjust enrichment, assumpsit, and money had and received.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

#### 1.    The ERCOT Market and Texas Grid

5.      Texas has an intrastate electric grid that is independent of the two larger national grids.[3] The ERCOT wholesale power market is subject to Texas's regulatory authority.[4] To operate its grid and regulate the wholesale power market, Texas has "establish[ed] a comprehensive and

---

[3] *See* Compl. ¶¶ 15-17.

[4] TEX. UTIL. CODE § 31.001(a).

adequate regulatory system for electric utilities" through the Public Utility Regulatory Act ("PURA").[5] PURA is "the exclusive means of regulating electric utilities in Texas."[6]

6.     ERCOT manages the Texas energy market subject to the plenary authority of the PUCT. ERCOT acts as a revenue-neutral market clearinghouse; it is "the central counterparty for all transactions settled by ERCOT" and "the sole buyer to each seller, and the sole seller to each buyer, of all energy."[7] And ERCOT determines market-clearing prices unless "otherwise directed by" the PUCT.[8] The PUCT's market pricing rules preserve its authority to take "actions necessary to protect the public interest, including actions that are otherwise inconsistent" with existing rules.[9]

7.     The PUCT exercised this authority on February 15, 2021, when the Storm was wreaking havoc on Texas. Despite the most severe scarcity of electricity the market had ever seen, ERCOT's system was not accounting for the demand from customers experiencing load shed. As a result, it reflected reserves that artificially suppressed prices.[10]

8.     In response, the PUCT ordered ERCOT to address "market anomalies identified during this EEA3 event."[11] The PUCT Order explained that prices less than $9,000/MWh, when excessive  demand  and  limited  supply  are  forcing  load  offline,  are  "inconsistent  with  the

---

[5] *Id.*

[6] *In re Entergy Corp.*, 142 S.W.3d 316, 323 (Tex. 2004) (orig. proceeding).

[7] ERCOT Protocols § 1.2(4), available at https://www.ercot.com/files/docs/2021/08/18/February_1__2021_Nodal_Protocols.pdf.

[8] 16 TEX. ADMIN. CODE § 25.501(a).

[9] *Id.* at § 25.505(f). The PUCT has the power to decertify or penalize ERCOT if it concludes ERCOT has not adequately performed its functions or duties. TEX. UTIL. CODE § 39.151(d).

[10] *See* Compl. ¶ 36.

[11] PUCT Order (2/15/21), attached hereto as Exhibit A. On February 16, the PUCT issued a second order (collectively with the February 15 order, "the PUCT Orders") nearly identical to the first, removing only a provision that would have retroactively applied scarcity pricing to transactions executed during the 16-hour period between initiation of load shed and issuance of the first order. PUCT Order (2/16/21), attached hereto as Exhibit B.

fundamental design of the ERCOT market" because "[e]nergy prices should reflect scarcity of the supply."[12] The PUCT concluded: "If customer load is being shed, scarcity is at its maximum, and the market prices for energy needed to serve that load should also be at [their] highest."[13] The PUCT accordingly ordered ERCOT to "ensure that firm load that is being shed in EEA3 is accounted for in ERCOT's scarcity pricing signals."[14] ERCOT then implemented the pricing outcomes directed by the PUCT Orders by making an administrative adjustment to its systems, which had the effect of holding prices at $9,000/MWh.[15]

 **2.     Griddy's Role in the ERCOT Market**

9.      Griddy was a retail electric provider in Texas from 2016 to 2021.[16] Griddy describes its business model as follows: "For a monthly subscription fee of $9.99, Griddy's customers gained access to electricity at wholesale pass-through rates."[17] Griddy blames ERCOT for its insolvency because when Griddy attempted to collect $9,000/MWh from its residential and small business customers, many customers refused to pay.[18]

10.     Griddy alleges from February 16 to February 24, "ERCOT demanded additional collateral from Griddy in the amount of approximatelyt [sic] $3.2 million and payment of settlement invoices in the amount of $30 million," and "Griddy could not meet these demands."[19]

---

[12] Ex. A.

[13] *Id.*

[14] *Id.*

[15] *See* Compl. ¶¶ 38-40.

[16] *Id.* ¶ 22.

[17] *Id.* ¶ 24.

[18] *Id.* ¶¶ 45-46.

[19] *Id.* ¶ 47.

Griddy failed to pay ERCOT,[20] so it was in default under the SFA.[21] Accordingly, on February 26, "ERCOT terminated the SFA, revoked Griddy's rights as a market participant, and then initiated a mass transition of Griddy's customers to POLRs."[22]

## B.    Procedural Background

11.    On March 15, 2021, Griddy filed a voluntary petition for relief under chapter 11.[23] ERCOT filed an amended proof of claim seeking the unpaid amounts owed by Griddy.[24] On July 23, 2021, the Court entered its order confirming Griddy's plan of liquidation.[25]

12.    On November 3, 2022, Griddy filed a Complaint against ERCOT asserting ten causes of action:

- Count 1 – seeking disallowance of ERCOT's claim based on ERCOT's alleged material breach of the SFA and the Protocols;[26]

- Count 2 – seeking disallowance of ERCOT's administrative claim under § 503(b)(9) based on ERCOT's alleged breach of the SFA and the Protocols;[27]

- Count 3 – seeking avoidance of ERCOT's claim as a preference under § 547;[28]

- Count 4 – seeking avoidance of ERCOT's claim as a constructively fraudulent transfer of an obligation under § 548;[29]

---

[20] *Id.* ¶¶ 46-47.

[21] *Id.* ¶ 48.

[22] *Id.* ¶ 49.

[23] *Id.* ¶ 53.

[24] *See* Claim 4555 (against Griddy Energy, LLC); Compl. ¶ 55.

[25] Compl. ¶ 53.

[26] *Id.* ¶¶ 76-80.

[27] *Id.* ¶¶ 81-85.

[28] *Id.* ¶¶ 86-93.

[29] *Id.* ¶¶ 94-99.

- Count 5 – seeking avoidance of ERCOT's claim as a constructively fraudulent transfer of money under § 548;[30]

- Count 6 – seeking affirmative recovery for ERCOT's alleged breach of contract;[31]

- Count 7 – negligence and negligence *per se*;[32]

- Count 8 – seeking disallowance of ERCOT's claim under § 502(d);[33]

- Count 9 – equitable subordination under § 510(c);[34] and

- Count 10 – unjust enrichment, assumpsit, and money had and received.[35]

13.     Of these claims, Counts 1 through 8 and 10 challenge the wholesale price for electricity during the Storm, constitute collateral attacks on the validity and applicability of the PUCT Orders setting those rates, and implicate whether the PUCT and ERCOT acted appropriately in setting the price of energy during the Storm.

## III.     ARGUMENTS AND AUTHORITIES

**A.     The filed rate doctrine bars Griddy's claims.**

14.     All but one of Griddy's claims challenge the wholesale electricity price during the Storm and seek to establish a rate for Griddy that would differ from what other market participants paid during the Storm. These claims run afoul of the filed rate doctrine.

---

[30] *Id.* ¶¶ 100-03.

[31] *Id.* ¶¶ 104-10.

[32] *Id.* ¶¶ 111-16.

[33] *Id.* ¶¶ 117-20.

[34] *Id.* ¶¶ 121-24.

[35] *Id.* ¶¶ 125-27.

15.     "The filed rate doctrine bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful."[36] A "filed rate" is "one approved by the governing regulatory agency," and it "is per se reasonable and unassailable in judicial proceedings brought by ratepayers."[37] The 100-year-old doctrine is premised on the principle that it should be "up to the respective governmental agency to determine whether the rates were discriminatory or unlawful, not the courts."[38] The filed rate doctrine applies "across the spectrum of regulated utilities,"[39] including in "energy cases" where it "preclude[s] lawsuits against companies based on rates that were filed with a government agency."[40]

16.     By prohibiting collateral attacks on energy prices, the filed rate doctrine instead defers challenges to the regulatory agency and then any prescribed judicial-review process.[41] The filed rate doctrine both "preserv[es] … the agency's primary jurisdiction over reasonableness of rates,"[42] and upholds the "nondiscrimination principle" by ensuring that "victorious plaintiffs [do not] wind up paying less than non-suing ratepayers."[43] Indeed, "[t]he doctrine prevents more than [just] judicial rate-setting; it precludes any judicial action which undermines agency rate-making

---

[36] *Tex. Com. Energy v. TXU Energy, Inc. ("TCE")*, 413 F.3d 503, 507 (5th Cir. 2005) (citation omitted).

[37] *Id.* at 508 (citation omitted).

[38] *Id.* at 507-08 (citing *Keogh v. Chi. & Nw. Ry. Co.*, 260 U.S. 156, 164 (1922)).

[39] *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981).

[40] *TCE*, 413 F.3d at 508; *see Winn v. Alamo Title Ins. Co.*, No. A-09-CA-214-SS, 2009 WL 7099484, at *3 (W.D. Tex. May 13, 2009) (collecting cases dismissing claims based on the filed rate doctrine).

[41] *Ark. La. Gas Co.*, 453 U.S. at 577-78; *see also Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354, 375 (1988).

[42] *Ark. La. Gas Co.*, 453 U.S. at 577-78

[43] *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 262, 265 (2d Cir. 2015).

authority."[44] It applies "equally strongly to regulation by state agencies,"[45] and bars relief in all courts, including bankruptcy courts.[46]

17.    Dismissal is required if a complaint (1) challenges a filed rate, regardless of the relief requested; *or* (2) asks a court to determine a different rate or the real value of goods received.[47] The Fifth Circuit has squarely held that wholesale electricity prices in the ERCOT market constitute filed rates.[48]

18.    Griddy both attacks a filed rate and seeks relief based on a different, hypothetical rate. Griddy's adversary proceeding is premised on the pervading theme that the $9,000/MWh price was illegal and "absurdly inflated."[49]

19.    Count 1 seeks "disallow[ance] in full" of ERCOT's proof of claim based on allegations that the rate at issue was "anti-competitive," violated the SFA and Protocols, lasted longer than was authorized, and should have been repriced for at least the last 33 hours of the

---

[44] *Id.* at 262 (citation omitted).

[45] *TCE*, 413 F.3d at 509 (citation omitted).

[46] *See In re Ultra Petro. Corp.*, 28 F.4th 629, 642 (5th Cir. 2022) (recognizing bankruptcy court could not approve the rejection of a contract on grounds "the rates were excessive" because that "would represent a prohibited collateral attack on the rate itself"); *In re Enron*, 328 B.R. 75, 78, 85–86 (S.D.N.Y. 2005) (sustaining a debtor's objection to a proof of claim and finding no relief available to a claimant whose proof of claim alleged price manipulation with respect to a filed rate).

[47] *See TCE*, 413 F.3d at 507.

[48] *Id.* at 509 (citing *Town of Norwood v. New England Power Co.*, 202 F.3d 408, 419 (1st Cir. 2000) and *Pub. Util. Dist. No. 1 v. Dynegy Power Mktg., Inc.*, 384 F.3d 756, 760–61 (9th Cir. 2004)); *see also Util. Choice, L.P. v. TXU Corp.*, No. Civ. A-H-05-573, 2005 WL 3307524, at *2 (S.D. Tex. Dec. 6, 2005) ("[T]he Fifth Circuit has held that the filed rate doctrine bars claims for damages stemming from rates approved by the PUCT in the Texas energy market.").

[49] Compl. at 1 ("Griddy and its customers . . . were saddled with absurdly inflated electric bills."); *see also id.* ¶¶ 44 ("[T]he bill for that period of time should have been 0.3% of what it ultimately was."), 63 ("Griddy and its customers were charged millions of dollars more than authorized under the SFA and Protocols."), 70 ("$9,000/MWh price was not properly authorized and was contrary to the SFA.").

Storm.[50] These allegations alone warrant dismissal of Count 1, as the gravamen of each of these contentions is that the rate at issue was too high or unlawful.[51] Additionally, a determination of whether ERCOT's claim should be allowed in the full amount or whether it should be zero—what this Court must do to determine Count 1—would constitute a *de facto* finding as to whether the rate was proper, and the filed rate doctrine precludes such a finding.[52] Griddy's request that the ERCOT claim be disallowed also implicates the nondiscrimination principle underlying the filed rate doctrine because Griddy's requested relief would result in Griddy "paying less than non-suing ratepayers."[53] The filed rate doctrine precludes this relief.

20.    Count 6 seeks affirmative recovery for ERCOT's alleged breach of contract on identical allegations as Count 1, the gist of which are that the filed rate was excessive.[54] Griddy cannot obtain affirmative relief on the basis that a filed rate was excessive.[55] And Count 10 is an alternative to Griddy's affirmative contract claim seeking disgorgement of any monies constituting unjust enrichment for ERCOT arising out of its "unauthorized pricing."[56] Count 10 is thus similarly an impermissible challenge to the filed rate as "unauthorized." Counts 1, 6, and 10 are barred by the filed rate doctrine because *any* theory or request for relief—including a proof of

---

[50] *Id.* ¶¶ 78, 80.

[51] *TCE*, 413 F.3d at 507 (dismissing claims alleging rates in the ERCOT market were, among other things, *anti-competitive*).

[52] For example, in *In re Enron*, it was irrelevant that an award for a claim might have been determined at the filed rate, without the court engaging in a redetermination of the hypothetically proper rate. *See* 328 B.R. at 84. Instead, the debtor's objection was sustained simply because the claimant's legal rights "*would have* to be measured" by a filed rate in a tariff. *Id.* (emphasis added).

[53] *Rothstein*, 794 F.3d at 265.

[54] Compl. ¶ 106.

[55] *Tex. Com. Energy v. TXU Energy, Inc.*, No. C-03-249, 2004 WL 1777597, at *16-17 (S.D. Tex. June 24, 2004), *aff'd*, 413 F.3d 503 (5th Cir. 2005).

[56] Compl. ¶ 126.

claim,[57] breach of contract,[58] and unjust enrichment[59]—that second guesses a filed rate instead of taking that rate as proper must be dismissed.[60]

21.     Counts 2, 3, 4, 5, 7, and 8 must be dismissed because they also challenge the filed rate either as unreasonable or anti-competitive.[61] Additionally, these Counts go a step further and ask the Court to evaluate what might have constituted a reasonable wholesale electricity rate or the fair value under the circumstances. This is equally impermissible under the filed rate doctrine.

22.     Count 2 is an objection to the portion of ERCOT's claim entitled to priority status under § 503(b)(9).[62] Under § 503(b)(9), "the *value* of any goods received by the debtor within 20 days before the commencement of a case under [title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business" is entitled to administrative priority.[63] But Griddy seeks to relegate the portion of ERCOT's claim entitled to administrative priority in part because "*the value* sought by ERCOT is not reasonable."[64] Similarly, Count 3 requires the Court

---

[57] *In re Enron*, 328 B.R. at 84-85.

[58] *Tex. Com. Energy*, 2004 WL 1777597, at *16-17.

[59] *Medco Energi U.S., L.L.C. v. Sea Robin Pipeline Co., L.L.C.*, 895 F. Supp. 2d 794, 813-14 (W.D. La. 2012) (approving the conclusion of the Second Circuit that "a claim for compensatory damages may implicate the filed rate doctrine not only where it expressly challenges a rate, but where it has the *effect* of challenging the filed rate," including a claim for unjust enrichment), *aff'd*, 729 F.3d 394 (5th Cir. 2013).

[60] *See Winn*, 2009 WL 7099484, at *3.

[61] Compl. ¶¶ 84 (Count 2), 91 (Count 3), 97 (Count 4), 101 (Count 5), 113 (Count 7), 118-20 (Count 8).

[62] *Id.* ¶ 84.

[63] 11 U.S.C. § 503(b)(9) (emphasis added).

[64] Compl. ¶ 84 (emphasis added).

to determine whether ERCOT gave Griddy "new value" after Griddy's alleged preferential transfer to ERCOT.[65]

23.     Counts 4 and 5 seek avoidance of allegedly fraudulent obligations and transfers, claims requiring Griddy to demonstrate, among other things, that it received less than reasonably equivalent *value* in exchange for the transfer or obligation.[66] Thus, Griddy necessarily asks this Court to determine *the value* of wholesale electricity during the Storm and what a reasonable rate might have been in Counts 2, 3, 4, and 5,[67] which is not permitted under the filed rate doctrine.[68] Finally, Count 7 seeks recovery for ERCOT's purported negligence in "implementing anti-competitive market pricing" "*in the amount of excess paid for electricity to ERCOT*."[69] This Count therefore similarly requires the Court to determine what Griddy allegedly should have paid for electricity. This inquiry is barred by the filed rate doctrine.

24.     Because Counts 1 through 8 and 10 challenge the filed rate as unreasonable or unlawful and seek relief requiring a judicial determination of a fair value of electricity, these Counts must be dismissed under the filed rate doctrine.

---

[65] *In re Toyota of Jefferson, Inc.*, 14 F.3d 1088, 1091 (5th Cir. 1994) (noting the "two keys" to the new value exception to a preferential transfer claim: "The creditor must have given (1) 'new value' and must have done so (2) after the preferential transfer") (emphasis omitted).

[66] Compl. ¶¶ 97, 101 (alleging Griddy received less than reasonably equivalent value); *In re Clear the Air, LLC*, 631 B.R. 286, 297 (Bankr. S.D. Tex. 2021) (enumerating elements of a fraudulent transfer claim under § 548, including "that the Debtor received *less than a reasonably equivalent value* in exchange for the transfer") (emphasis in original).

[67] Count 8, disallowance under § 502(d), depends upon the success of Counts 4 and 5, Compl. ¶¶ 118-20, so it fails under the filed rate doctrine for the same reasons Counts 4 and 5 do. Additionally, it only seeks recovery under § 550, a claim that cannot stand alone and fails if the underlying avoidance claims do. *Griddy*, 2022 WL 6795069, at *4.

[68] *Rothstein*, 794 F.3d at 262 (filed rate doctrine precludes "judicial rate-setting").

[69] Compl. ¶¶ 113, 116 (emphasis added).

**B.     This Court should abstain from hearing any of Griddy's claims under *Burford v. Sun Oil Co.***

25.     According to the United States Supreme Court, abstention is required when "difficult questions of state law [exist] bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" or the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[70] The *Burford* abstention doctrine preserves federalism values and prevents federal courts—including, necessarily, bankruptcy courts[71]—from improperly interfering in state regulatory decisions.[72]

26.     In *Wilson*, the Fifth Circuit enumerated five factors for courts to consider when deciding whether to abstain under *Burford*: (1) "whether the cause of action arises under federal law or state law"; (2) "whether the case requires inquiry into unsettled issues of state law, or into local facts"; (3) "the importance of the state interest involved"; (4) "the state's need for a coherent policy in that area"; and (5) "the presence of a special state forum for judicial review."[73] *Wilson* concerned the state-law retroactivity of a decision giving the Louisiana Public Service Commission the power to regulate the rates of rural electric cooperatives.[74] Abstention was proper because of Louisiana's supervening state interest in electric regulation, especially given

---

[70] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976); *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

[71] *E.g.*, *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 313, 316 (5th Cir. 1993) (affirming abstention on *Burford* grounds in case premised on bankruptcy jurisdiction).

[72] *Burford*, 319 U.S. at 334.

[73] *Wilson*, 8 F.3d at 314 (internal citations omitted).

[74] *Id*. at 312-13.

Louisiana's "centralized system of review" in state court.[75] Similar to the analysis applied in *Wilson*, all five factors support *Burford* abstention here.

### 1. Griddy's claims raise significant issues of Texas law.

27.     The first *Burford* factor considers "whether the plaintiff's claim may be 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed.'"[76] Even if a cause of action does not facially arise under state law, abstention may be appropriate if "the underlying issues presented are state law issues."[77]

28.     Griddy's allegations, no matter how they are framed, arise under Texas law. Griddy has alleged that ERCOT's wholesale electricity prices during the Storm, as well as the PUCT Orders on which those prices were based, violated Texas statutes,[78] the Protocols,[79] and the SFA.[80] These allegations confirm that Griddy intends to ask the bankruptcy court to adjudicate its state-law challenges to ERCOT's pricing actions—entangling Griddy's claims "in a skein of state law."[81] Additionally, Counts 1, 6, 7, and 10 are state law causes of action.

---

[75] *Id.* at 315-16; *accord Sierra Club v. City of San Antonio*, 112 F.3d 789, 794 (5th Cir. 1997) (finding *Burford* abstention appropriate where "a comprehensive regulatory scheme" administered by a state agency governed an "entirely intrastate" aquifer at the center of the dispute).

[76] *Sierra Club*, 112 F.3d at 795.

[77] *Koerner v. Garden Dist. Ass'n*, 78 F. App'x 960, 963 (5th Cir. 2003).

[78] *E.g.,* Compl. ¶¶ 66 (alleging PUCT Orders are rules under the APA), 67 ("[N]either the PUCT nor ERCOT followed the emergency rulemaking procedure under the APA[.]").

[79] *E.g., id.* ¶¶ 63 ("[ERCOT] ignored the … pricing process set forth in the Protocols[.]"), 73 ("ERCOT did not follow the change procedures set forth in the Protocols."), 78 ("ERCOT's charging the amounts at $9,000/MWh was a material violation of the Protocols and the SFA[.]"), 106, 108, 113.

[80] *E.g., id.* ¶¶ 62-63 ("[ERCOT] ignored the terms of the SFA . . . ."), 70 ("Thus, the $9,000/MWh price was not properly authorized and was contrary to the SFA."), 106 ("ERCOT materially breached the SFA (and, hence, the Protocols)[.]").

[81] *Sierra Club*, 112 F.3d at 795.

### 2. Griddy's claims require resolution of unsettled issues of Texas law.

29. Griddy's claims "require[] inquiry into unsettled issues of state law"[82] and will require this Court to examine the interplay between the Protocols, the PUCT rules and PUCT Orders, and PURA. Because of the unusual emergency circumstances of the Storm, scant precedent bears directly on Griddy's arguments, and the validity and reviewability of the PUCT Orders is currently the subject of state-court proceedings.[83] Resolution would require this Court to "delv[e] into highly local issues of fact" regarding the operation and management of the grid during the Storm.[84] These questions implicate "precisely the sort of highly localized, specialized, judgmental" analysis that requires abstention.[85]

30. Moreover, because the SFA and Protocol provisions Griddy attacks have never been judicially construed, the bankruptcy court's determination of Griddy's claims could have far-reaching effects on the relationship between ERCOT and every market participant. A ruling that the PUCT Orders were invalid (or inapplicable), or that ERCOT erred by implementing them, would destabilize the market by inviting further federal-court litigation of these issues. And such a ruling might drastically affect the power of the nonparty PUCT, which Griddy alleges failed to comply with the Texas Administrative Procedures Act (the "APA") when issuing the PUCT Orders.[86] This would have potentially severe consequences on the PUCT's ability to regulate

---

[82] *Wilson*, 8 F.3d at 314.

[83] Many of the same questions raised by Griddy's Complaint are now pending in state court proceedings—i.e., the legislatively prescribed fora for such disputes. *See Exelon Generation Co. v. PUC*, No. D-1-GN-21-001772 (Tex. Dist. Ct., Travis Cnty. filed Apr. 19, 2021); *Luminant Energy Co. v. PUC*, No. 03-21-00098-CV (Tex. App.—Austin filed March 2, 2021).

[84] *Wilson*, 8 F.3d at 314.

[85] *Id*. at 315.

[86] Compl. ¶¶ 66 (alleging PUCT Orders are rules under the APA), 67 ("[The PUCT] cannot be excused from the notice and comment period required under the Texas APA. Moreover, neither

ERCOT and the market in times of crisis.[87] These are the exact kind of important, unsettled questions of state law that command *Burford* abstention.

### 3. Texas has a uniquely important interest in the regulation of the ERCOT market.

31.  The third *Burford* factor recognizes that "utility regulation 'is one of the most important of the functions traditionally associated with the police power of the States,'" and "federal courts have little interest in hearing" such matters.[88] In this special context, federal bankruptcy law does not "represent a supervening federal interest."[89] The actions of the PUCT and ERCOT that Griddy complains of were taken pursuant to a "comprehensive and adequate regulatory system" that was "enacted to protect the public interest inherent in the rates and services of electric utilities," of which ERCOT is an essential part.[90] Griddy's claims, which constitute challenges to the market-wide prices for energy set by state regulators during an unprecedented statewide emergency, are better addressed in the designated state forum—not a federal bankruptcy court. Because the Legislature has determined that state control of the Texas energy market is "a matter of vital state interest,"[91] *Burford* abstention is warranted.

---

the PUCT nor ERCOT followed the emergency rulemaking procedure under the APA[.]"), 68 ("[T]he PUCT never followed the applicable rulemaking procedures[.]").

[87] *See* Tex. Util. Code § 39.151(d) (giving the PUCT "complete authority" over ERCOT).

[88] *Wilson*, 8 F.3d at 315.

[89] *Id.*

[90] Tex. Util. Code § 31.001(a); *see also id.* § 39.001.

[91] *Sierra Club*, 112 F.3d at 796.

**4.      Texas's grid and energy market need a coherent policy.**

32.      Under the fourth factor, "*Burford* abstention is intended to avoid recurring and confusing federal intervention into an ongoing state scheme."[92] PURA reflects the State's conclusion that a unified state regulatory regime is critical to achieving its energy policy goals. Texas's interest in ensuring coherent and uniform regulation of its energy market further confirms that a federal bankruptcy court should not invade that state regulatory field.

33.      In energy regulation—as in gas-field or aquifer regulation—any decision made with respect to one party "necessarily affects other parties."[93] Griddy's allegations are based on the same PUCT Orders, Protocols, and SFA provisions that applied universally to all market participants during the Storm. The SFA affects every participant in the ERCOT market, and to ensure a coherent policy, it should be given a consistent interpretation by the PUCT and the state courts that review the PUCT's actions.[94]

**5.      Texas has established a special state fora for judicial review.**

34.      The fifth *Burford* factor considers "the presence of a special state forum for judicial review."[95] In *Burford*, the Supreme Court found it significant that, "[t]o prevent the confusion of multiple review of the same general issues," the Texas Legislature "provided for concentration of all direct review of the [Railroad] Commission's orders in the State district courts of Travis County."[96] Similarly, in *Wilson*, the Fifth Circuit pointed to a state constitutional provision

---

[92] *Wilson*, 8 F.3d at 315.

[93] *Sierra Club*, 112 F.3d at 794.

[94] *See Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 139-40 (Tex. 2018); *In re Entergy Corp.*, 142 S.W.3d 316, 322-23 (Tex. 2004).

[95] *Wilson*, 8 F.3d at 314.

[96] *Burford*, 319 U.S. at 326.

"centraliz[ing] appeals in the state district court in the state capital."[97] The same is true here. At the heart of Griddy's claims is a challenge to the PUCT's regulatory actions and ERCOT's pricing decisions—which must be brought in Travis County district court or in the Third Court of Appeals in Austin.[98]

## C.  Griddy's Complaint should be dismissed for failure to join an indispensable party.

35.  Bound up in Griddy's allegation that the prices were inflated is the contention that the PUCT Orders directing this pricing "failed to meet the strictures of the Texas APA."[99] Effectively conceding (as it must) that ERCOT is required to follow orders of the PUCT, Griddy contends "the Rate-Setting Orders never became effective" because the PUCT failed to take public comment on the PUCT Orders or otherwise establish the necessity of emergency rulemaking.[100] The PUCT is an indispensable party to any of Griddy's claims premised on these allegations: Counts 1 through 8 and 10.

### 1.  Legal standard

36.  An indispensable party under Rule 12(b)(7) is one whose presence in the lawsuit is required for the fair and complete resolution of the dispute.[101] To resolve a Rule 12(b)(7) motion to dismiss, the Court must first determine whether a person should be joined under Rule 19. A party is required to be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

---

[97] *Wilson*, 8 F.3d at 316.

[98] TEX. GOV'T CODE §§ 2001.038(b), 2001.176(b)(1); TEX. UTIL. CODE §§ 11.007(a) (applying Chapter 2001 of the Government Code to PURA), 39.001(e).

[99] Compl. at 1.

[100] *Id.* ¶¶ 66-68.

[101] *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

> (i) as a practical matter impair or impede the person's ability to protect the interest; or

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.[102]

37.     Once the moving party has met its "initial burden of demonstrating that a missing party is necessary, after an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder."[103] "If joinder is warranted, then the person will be brought into the lawsuit. But if such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation."[104]

38.     The PUCT is indispensable under Rule 19(a)(1)(B) because state law provides the PUCT an interest in this proceeding it cannot protect as a nonparty and because the absence of the PUCT may result in multiple or inconsistent obligations for ERCOT.

### 2.    First prong: The PUCT's interest

39.     Rule 19(a)(1)(B)(ii) concerns the absentee's interest in the litigation. And "a federal court can look to state law to determine the relative interest that the party has in the litigation" under Rule 19.[105] Under Texas law, an action challenging the validity or applicability of an

---

[102] Fed. R. Civ. P. 19(a)(1).

[103] *Nat'l Cas. Co. v. Gonzalez*, 637 F. App'x 812, 814-15 (5th Cir. 2016) (internal quotations omitted) (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986)).

[104] *H.S. Res.*, 327 F.3d at 439; *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 267 (5th Cir. 2022).

[105] *Whalen v. Carter*, 954 F.2d 1087, 1096 n.8 (5th Cir. 1992).

agency's order is a challenge to which the agency must be a party.[106] Griddy cannot circumvent this statutory requirement by electing to bring bankruptcy claims against ERCOT—rather than an APA claim against the PUCT—because Griddy necessarily challenges the conduct of the PUCT. The only way to challenge the PUCT's regulatory actions is via the APA.[107]

40.     As explained above, Counts 1 through 8 and 10 challenge—in some manner under various theories—the wholesale electricity rate charged to Griddy during the Storm. But Griddy admits the directive requiring "firm load shed [be] accounted for in [ERCOT's] scarcity pricing signals" was memorialized in the PUCT Orders.[108] Thus, each of these counts implicates the propriety of the PUCT Orders and ERCOT's actions under them. Texas law dictates the PUCT has an interest in and must be a party to such a challenge.

41.     Counts 1 and 6 demonstrate the PUCT's necessity. Both Counts allege ERCOT breached the SFA and Protocols by, among other things, "requiring that 'firm load that was being shed in EEA3 was accounted for in ERCOT's scarcity pricing signals,' thus giving rise to an anti-competitive set price of $9,000/MWh on and after February 15, 2021."[109] Griddy admits this instruction came from the PUCT.[110] Accordingly, in Counts 1 and 6, Griddy seeks relief from

---

[106] TEX. GOV'T CODE §§ 2001.038(a), (c); *Tex. Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 904 (Tex. App.—Austin 2009, appeal dismissed) (noting in the same way claims challenging the validity of ordinances or statutes must be brought against the government entity that made the statute or ordinance, "the APA requires that the relevant state agency be made a party to any action challenging the validity of an agency rule").

[107] *See Tex. Gen. Indem. Co. v. Tex. Workers' Compensation Comm'n*, 36 S.W.3d 635, 637 (Tex. App.—Austin 2000, no pet.) (the APA is the "method for challenging the validity or applicability of an agency rule").

[108] Compl. ¶¶ 39-40.

[109] *Id*. ¶¶ 78, 83 (alterations omitted).

[110] *Id*. ¶ 40.

19

ERCOT premised on the PUCT's conduct. But ERCOT cannot (and should not be required to) defend the PUCT's regulatory actions for the PUCT. The PUCT is entitled to defend itself.[111]

### 3.    Second prong: ERCOT's risk

42.    Rule 19(a)(1)(B)(ii) is also satisfied because the absence of the PUCT harms ERCOT. First, ERCOT could be exposed to multiple or inconsistent obligations related to the prices it set during the Storm and its statutorily mandated task of carrying out the PUCT Orders. ERCOT does not have discretion to disobey PUCT Orders, and the PUCT can fine or even decertify ERCOT should it do so.[112] A ruling by this Court that rejects the PUCT Orders, or ERCOT's implementation of the PUCT Orders, would force ERCOT to act contrary to what state law requires, potentially risking discipline by the PUCT. This is particularly troublesome because the validity and applicability of the PUCT Orders is currently the subject of litigation in Texas state court (to which the PUCT *is* a party), meaning ERCOT may very well be exposed to conflicting obligations in the face of these competing judgments.

### 4.    It is infeasible to join the PUCT under Rule 19(b).

43.    Once an entity is established as an indispensable party under Rule 19(a), the analysis shifts to whether joinder will be feasible. If joinder is not feasible, the court should determine whether the action should be dismissed pursuant to Rule 19(b). In this case, joinder of the PUCT is not feasible because the PUCT has sovereign immunity pursuant to the Eleventh

---

[111] *Lee*, 47 F.4th at 267 (holding licensees of a university's trademarks could not adequately defend the university's ownership of the marks and that the university was an indispensable party).

[112] TEX. UTIL. CODE §§ 39.151(d), (d-4)(5).

Amendment.[113] In the Fifth Circuit, when an indispensable party is immune from suit in federal court, dismissal is required regardless of the factors listed in Rule 19(b).[114]

**D.      Certain Counts of Griddy's Complaint should be dismissed under Rule 12(b)(6).**

**1.      Count 6 should be dismissed because Griddy has no legal right to recover the damages it seeks.**

44.      Count 6 seeks affirmative recovery for ERCOT's alleged breach of contract, claiming ERCOT breached the SFA and the Protocols by treating its failure to pay as a default under the SFA, terminating its business, and transitioning its customers to Providers of Last Resort ("POLR").[115] Griddy further claims ERCOT "breached the SFA by raising the price of electricity to $9,000/MWh, failing to reprice the electricity even after the emergency passed, and then terminating Griddy and ending its business."[116] Griddy claims it was damaged "in the amount of the loss of its going-concern value as a business" and seeks judgment against ERCOT "for all such

---

[113] *See Krempp v. Dobbs*, 775 F.2d 1319, 1321 (5th Cir. 1985) (finding state commission entitled to Eleventh Amendment immunity).

[114] *Lee*, 47 F.4th at 268. While the PUCT's immunity makes examination of the Rule 19(b) factors unnecessary, they militate in favor of the same result. *See* FED. R. CIV. P. 19(b); *Schutten v. Shell Oil Co.*, 421 F.2d 869, 873 (5th Cir. 1970). The first factor favors dismissal because the PUCT's absence will prejudice ERCOT by exposing it to inconsistent obligations to both the PUCT and market participants and by requiring ERCOT to take actions beyond its statutory authority. *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 n.4 (10th Cir. 1989) (stating prejudice inquiry under Rule 19(b) "is essentially the same as the inquiry under Rule 19(a)(2)(i) into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest"). The second factor favors dismissal because there is no method by which a judgment rendered without the PUCT can lessen the prejudice or inconsistent obligations facing ERCOT and the PUCT. The third factor favors dismissal because any judgment excluding the PUCT will be inadequate, as it leaves open the question of the market-wide effect of a contrary state-court judgment that *does* bind the PUCT. Finally, the fourth factor favors dismissal because Griddy has an adequate state remedy, as it may challenge the PUCT Orders and ERCOT's conduct pursuant to Texas's statutory framework.

[115] Compl. ¶ 106.

[116] *Id.* ¶ 108.

amounts."[117] Count 6 fails for two reasons: (1) Griddy does not have any continuing right in its customers, and (2) Griddy cannot obtain damages "in the amount of the loss of its going-concern value as a business"[118] because (a) it is not a recoverable damage and (b) its business model is illegal.

45.     First, as this Court has already decided as to Griddy specifically, Griddy has no property right to its former customers.[119] And Griddy's going-concern value as a business derives primarily—if not exclusively—from its customers.[120] But Griddy may not recover damages commensurate with the value of something to which it no longer has a legal right.[121] Because Griddy's right to its customers terminated when ERCOT terminated Griddy's SFA,[122] Griddy cannot recover its going-concern value as a business. Nor can ERCOT "be liable for damages to [Griddy], whether under tort, contract or any other theory of legal liability, for transitioning . . . a customer from [Griddy] to" a POLR.[123]

---

[117] *Id.* ¶¶ 109-10.

[118] *Id.* ¶ 109.

[119] *Griddy*, 2022 WL 6795069, at *2-3 (holding Griddy lacked property interest in its customers after ERCOT terminated its SFA and dismissing adversary proceeding seeking recovery for the transfer of the customers). Because Griddy has already litigated (and lost) the issue regarding its property right to its former customers, Griddy is collaterally estopped from litigating that issue in this action. *Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223, 228 (5th Cir. 2018) ("Issue preclusion or collateral estoppel prevents a party from litigating an issue it previously litigated and lost in another action.") (internal quotation marks and emphasis omitted).

[120] *See* Compl. ¶ 109; *see also id.* at 2 (complaining ERCOT transferred Griddy's customers for no compensation).

[121] *Griddy*, 2022 WL 6795069, at *2-3.

[122] *Id.*; *Hoffman v. Hous. Soc'y for the Prevention of Cruelty to Animals (In re Hoffman)*, No. 16-3222, 2017 WL 727543, at *5 (Bankr. S.D. Tex. Feb. 23, 2017) (Isgur, J.), *aff'd*, No. H-17-2332, 2019 WL 2501556 (S.D. Tex. 2019), *aff'd*, 795 F. App'x 291 (5th Cir. 2020).

[123] 16 TEX. ADMIN. CODE § 25.43(o)(2).

46.     Second, the amount of the loss of Griddy's going-concern value as a business is a category of damages not recoverable under any contract theory or the SFA. Loss of going-concern value as a business is a consequential damage.[124] Consequential damages are not recoverable for breach of contract under Texas law unless contemplated by the parties at the time the contract was formed.[125] The SFA does not contemplate consequential damages; in fact, it precludes their recovery.[126]

47.     Finally, Griddy is of *no value* as a going-concern because Griddy's business model is now illegal. Following the Storm, the Texas Legislature determined retail electric providers may no longer offer electricity to residential customers at real time wholesale rates.[127] Griddy admits this was its business model: "For a monthly subscription fee of $9.99, Griddy's customers gained access to electricity at wholesale pass-through rates."[128] Griddy's loss of going-concern value as an *illegal* business is now necessarily zero.[129]

48.     Count 6, Griddy's affirmative contract claim, should be dismissed.

---

[124] *Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 13 (Tex. App.—Dallas 2007, pet. denied) (noting plaintiff "made no computations with respect to consequential damages incurred at the time of breach, *such as loss in value of the business as a going concern*") (emphasis added).

[125] *Basic Cap. Mgmt., Inc. v. Dynex Com., Inc.*, 348 S.W.3d 894, 901 (Tex. 2011).

[126] SFA § 9(A) ("Neither party is liable to the other for any special, indirect, punitive, or consequential damages[.]"), attached hereto as Exhibit C.

[127] TEX. UTIL. CODE §§ 39.110(a), (b) (prohibiting a retail electric provider from offering a wholesale indexed product—"a retail electric product in which the price a customer pays for electricity includes a direct pass-through of real-time settlement point prices"—to residential or small commercial customers).

[128] Compl. ¶ 24.

[129] *See In re OCA, Inc.*, 552 F.3d 413, 422 (5th Cir. 2008) ("Under Texas law, a contract is illegal, and thus void, if the contract obligates the parties to perform an action that is forbidden by the law of the place where the action is to occur.").

2.   **Count 7 should be dismissed because Griddy fails to state a plausible negligence claim, the claim is barred by the economic loss rule, and Griddy limited its right to seek consequential damages.**

a.   **Griddy fails to state a plausible negligence claim.**

49.   A negligence claim requires the existence of a cognizable legal duty.[130] Under Texas law, a negligence plaintiff must establish a "*specific* legal duty owed to *him*."[131] Griddy relies on ERCOT's legislatively required function to ensure the reliability of the grid as the basis for its negligence claim.[132] This does not translate to a tort duty owed to Griddy.[133] The Texas Supreme Court cautions against creating new common law duties when a comprehensive regulatory scheme exists.[134] "Courts may not hold people to very general duties of exercising ordinary care in all circumstances."[135] Nor could Griddy's reliance on § 39.001(d) support a negligence *per se* claim.[136] Where a statute does not impose any absolute duties or require particular conduct, it cannot, as a matter of law, support a negligence *per se* claim.[137]

---

[130] *See Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000) ("Duty is the threshold inquiry of any negligence case.").

[131] *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 660 (Tex. App.—Dallas 2005, pet. denied) (emphasis added).

[132] Compl. ¶ 112.

[133] *See, e.g.*, *Entex, A Division of Noram Energy Corp. v. Gonzalez*, 94 S.W.3d 1, 9-10 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (statute requiring gas utilities to furnish systems that are "safe, adequate, efficient, and reasonable" did not prohibit or require any conduct and could "not provide an adequate basis for imposition of a negligence or negligence *per se* duty").

[134] *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 152 (Tex. 2022) (finding plaintiff should take nothing on negligence, negligent undertaking, and gross negligence claims because no legal duty existed and imposition of a new court-created common-law duty was not warranted).

[135] *Id.* at 145.

[136] *Id.* ¶ 112.

[137] *Entex*, 94 S.W.3d at 5-6, 9; *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 456 (Tex. App.—Texarkana 2002, pet. denied).

50.    A negligence claim also requires a breach of a duty.[138] Griddy claims ERCOT breached its duty by "implementing anti-competitive market pricing … when no PUCT order or other protocol . . . purported to authorize such actions[.]"[139] This purported breach does not amount to negligence when it is inconsistent with the claimed duty—to ensure reliability of the grid.

51.    Because Griddy fails to allege a cognizable private tort duty owed by ERCOT to Griddy and a breach of that duty, Count 7 should be dismissed.

### b.    Griddy's negligence claim is barred by the economic loss rule.

52.    Griddy's negligence claim is predicated on the same complaints and injuries as Griddy's allegations of ERCOT's improper pricing in violation of the SFA and Protocols.[140] Griddy fails to plead any other distinct injury caused by ERCOT's alleged negligence.[141] "The pure economic loss rule prevents pursuit of a negligence claim predicated on a duty created under a contract to which the plaintiff is a party when tort damages are sought for an injury consisting only of economic loss to the subject of the contract."[142] Count 7 should be dismissed because it does not allege tort damages independent of the alleged contract damages.[143]

---

[138] *Ford*, 230 F.3d at 830.

[139] Compl. ¶ 113.

[140] *Id.* ¶¶ 113, 115-16.

[141] *Id.* ¶¶ 111-16.

[142] *R&K Fabricating, Inc. v. Frost Nat'l Bank (In re R&K Fabricating, Inc.)*, No. 12-03177, 2013 WL 1292645, at * 5 (Bankr. S.D. Tex. Mar. 27, 2013) (Isgur, J.).

[143] And for the same reasons Griddy's alleged damages cannot support a contract claim—because Griddy's business model was outlawed by the Legislature—they cannot support a negligence claim. Additionally, to the extent Griddy's tort claims are based on ERCOT's transition of customers, they are barred. 16 TEX. ADMIN. CODE § 25.43(o)(2).

> **c.     Griddy agreed to limit its right to seek consequential damages against ERCOT.**

53.     As noted above, under the SFA, Griddy's right to seek consequential damages from ERCOT is contractually foreclosed.[144] Griddy's negligence claim seeks, in part, damages "for the loss of its going-concern value as a business."[145] These are indirect, consequential damages flowing from ERCOT's alleged violations of the SFA and the Protocols.[146] Parties are free to limit their rights to damages by contract,[147] and Griddy has done so with respect to the damages it seeks for this claim. Count 7 should be dismissed.

> **3.     Count 9 should be dismissed because Griddy fails to plead a plausible equitable subordination claim.**

54.     Count 9 seeks to subordinate ERCOT's claim "to the claims of all other creditors"[148] because "[e]quity would not be served by permitting ERCOT to share pari-passu in any distribution to creditors who are only creditors due to ERCOT's actions."[149] "Equitable subordination is a remedial, not penal, measure which is used only sparingly."[150] The Fifth Circuit "ha[s] largely confined equitable subordination to three general paradigms":

> (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors.[151]

---

[144] Ex. C at § 9(A).

[145] Compl. ¶ 116.

[146] *Mood*, 245 S.W.3d at 13; *see also* 16 TEX. ADMIN. CODE § 25.43(o)(2).

[147] *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 230-31 (Tex. 2019).

[148] Compl. ¶ 124.

[149] *Id.* ¶ 123.

[150] *In re United States Abatement Corp.*, 39 F.3d 556, 561 (5th Cir. 1994).

[151] *Id.*

55.     Griddy's equitable subordination claim fits none of these paradigms. "The first paradigm is inapplicable in this case because [Griddy] has offered no facts to establish that [ERCOT] had a fiduciary obligation to [Griddy]."[152] The second paradigm does not apply because there are no allegations ERCOT exercised any control over Griddy, let alone control that disadvantaged Griddy's other creditors. On the contrary, there is merely a "bona fide dispute among the parties as to what amount (if any) [Griddy] owed [ERCOT] under the" SFA.[153] "The third paradigm is inapplicable because [Griddy] has not alleged that [ERCOT] defrauded [Griddy] or its creditors."[154] Griddy has failed to allege the sort of "egregious misconduct" that will support an equitable subordination claim.[155]

56.     Because Griddy failed to plead a plausible equitable subordination claim, Count 9 should be dismissed.[156]

**4.     Count 10 should be dismissed because Griddy fails to plead plausible claims for unjust enrichment, assumpsit, and money had and received.**

57.     Count 10 seeks equitable relief as a result of ERCOT's alleged "unauthorized pricing" in the form of "restitution and/or disgorgement of said moneys under a theory of unjust enrichment, assumpsit, and/or money had and received."[157] The Supreme Court of Texas has

---

[152] *Id.*

[153] *Id.* at 562.

[154] *Id.* at 561.

[155] *See In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 357 (5th Cir. 1997); *see also In re First All. Mortg. Co.*, 471 F.3d 977, 1006 (9th Cir. 2006) ("Where non-insider, non-fiduciary claims are involved, as is the case here, the level of pleading and proof is elevated: gross and egregious conduct will be required before a court will equitably subordinate a claim.").

[156] *United States Abatement*, 39 F.3d at 562 (affirming Rule 12(b)(6) dismissal of equitable subordination claim where the claim did not fit any of the three paradigms acknowledged by the Fifth Circuit).

[157] Compl. ¶ 126.

explained that recovery under equitable theories is "generally inconsistent" with an express agreement covering the dispute.[158] Good reason supports that rule—quasi-contract actions presuppose no contract governs the dispute.[159] "When a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory."[160]

58.     Settled Texas law precludes Griddy's recovery for unjust enrichment,[161] assumpsit,[162] and money had and received[163] because each are quasi-contractual theories that are covered by a valid and express contract, the SFA, under which Griddy has sought recovery.[164] "A party cannot recover on both a contractual and quasicontractual theory; success on the former precludes success on the latter."[165]

59.     Because Griddy has failed to plead a plausible claim for unjust enrichment, assumpsit, and money had and received, Count 10 should be dismissed.

---

[158] *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

[159] *Id.* (explaining a "quasi-contract . . . is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended") (internal quotation marks omitted).

[160] *Villarreal v. First Presidio Bank*, 744 F. App'x. 204, 205 (5th Cir. 2018) (quoting *Fortune*, 52 S.W.3d at 684) (alterations incorporated).

[161] *In re iHeartMedia, Inc.*, 597 B.R. 339, 359 (Bankr. S.D. Tex. 2019) (Isgur, J.) (holding that the existence of express contract governing the responsibilities of, and remedies available to, the parties prevented parties from pursuing unjust enrichment claim).

[162] *McIntosh v. Wiley*, No. 5:04-CV-120, 2006 WL 3691109, at *5-6 (S.D. Tex. Dec. 11, 2006) (holding that the court need not continue to evaluate the viability of claims of unjust enrichment, assumpsit, and implied contract because recovery under any of these theories, as a matter of law, is precluded by the parties' contract).

[163] *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 815 (Tex. App.—Dallas 2012, no pet.) ("The quasi-contractual action for money had and received is a cause of action for a debt not evidenced by a written contract between the parties.").

[164] Compl. ¶¶ 105-06, 108-09.

[165] *Edminster, Hinshaw, Russ & Assocs., Inc. v. Downe Twp.*, 953 F.3d 348, 352 (5th Cir. 2020).

# IV.    CONCLUSION

ERCOT respectfully requests this Court: (1) dismiss Counts 1 through 8 and 10 under the filed rate doctrine; (2) abstain from deciding any claims under *Burford*; (3) dismiss Counts 1 through 8 and 10 under Rule 12(b)(7) for failure to join the PUCT; and (4) dismiss Counts 6, 7, 9, and 10 under Rule 12(b)(6) for failure to state a plausible claim.


Dated: December 22, 2022                    Respectfully submitted,

                                            **MUNSCH HARDT KOPF & HARR, P.C.**


                                            By: *Jamil N. Alibhai*
                                                Jamil N. Alibhai
                                                Texas Bar No. 00793248
                                                jalibhai@munsch.com
                                                Kevin M. Lippman
                                                Texas Bar No. 00784479
                                                klippman@munsch.com

                                                3800 Ross Tower
                                                500 N. Akard Street
                                                Dallas, Texas 75201-6659
                                                Telephone: (214) 855-7500
                                                Facsimile: (214) 855-7584

                                            **COUNSEL FOR DEFENDANT
                                            ELECTRIC RELIABILITY COUNCIL OF
                                            TEXAS, INC.**


## CERTIFICATE OF SERVICE

I certify that on December 22, 2022, I caused a copy of the foregoing document to be served via CM/ECF on all counsel of record.

                                            By: *Jamil N. Alibhai*
                                                Jamil N. Alibhai