**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| GRIDDY ENERGY LLC, | § | Case No. 21-30923 (MI) |
| | § | |
| Debtor. | § | |
| | § | |
| RUSSEL F. NELMS, in his capacity as | § | |
| Plan Administrator of the Estate of | § | |
| GRIDDY ENERGY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 22-03315 |
| | § | |
| ELECTRIC RELIABILITY COUNCIL | § | |
| OF TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |

## ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S REPLY IN SUPPORT OF ITS SECOND MOTION TO DISMISS AND FOR ABSTENTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

I.  PRELIMINARY STATEMENT ........................................................................... 1

II. ARGUMENT AND AUTHORITIES.................................................................... 2

    A.  The Court should dismiss Griddy's breach of contract claim.............................. 2

    i.   The Court can construe the SFA based on its plain terms. ................................... 2

    ii.  Griddy fails to plead it is entitled to relief under the force majeure provision of the SFA. ........................................................................................................ 2

    iii. Griddy's claims for damages to its loss of business value are foreclosed by the SFA and ERCOT's immunity for such claims. .................................................. 5

    iv.  That the Legislature outlawed Griddy's business model is dispositive of Griddy's contract claim.................................................................................................. 7

    B.  Griddy pleaded a complete defense to its preference and disallowance claims. .... 7

    C.  Griddy fails to plead control sufficient to sustain a claim for equitable subordination.................................................................................................. 8

    D.  Griddy's alternative equitable claims are not plausible. ....................................... 9

    E.  This Court should abstain under *Burford*............................................................ 10

    i.   The SFA is more than a private contract, and the Supreme Court of Texas has already decided that claims that ERCOT breached the SFA belong before the PUCT. .......................................................................................................... 11

    ii.  This Court should abstain under Burford, under Just Energy and Entrust. ....... 12

    iii. This Court should stay Counts III and VI and dismiss Count IV. ...................... 15

    F.  ERCOT is immune from liability on Count VI. .................................................. 15

    G.  Leave to amend should be denied. ....................................................................... 17

III. CONCLUSION................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Allied Chemical Corp. v. Mackay,*
   695 F.2d 854 (5th Cir. 1983) ................................................................................4

*Autobond Acceptance Corp. v. Progressive N. Ins. Co.,*
   76 S.W.3d 489 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ....................................2

*BB Fit, LP v. EREP Preston Trail II, LLC,*
   No. 05-22-00682-CV, 2023 WL 7401501 (Tex. App.—Dallas Nov. 9, 2023, no pet.) ...........5

*Blair v. Deutsche Bank Nat'l Tr. Co.,*
   609 F. App'x 767 (5th Cir. 2015) ...........................................................................17

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC,*
   572 S.W.3d 213 (Tex. 2019).................................................................................6

*Brewster v. Dretke,*
   587 F.3d 764 (5th Cir. 2009) ...............................................................................17

*Carty v. State Office of Risk Mgmt.,*
   733 F.3d 550 (5th Cir. 2013) ...............................................................................16

*In re CEC Entertainment, Inc.,*
   625 B.R. 344 (Bankr. S.D. Tex. 2020) ....................................................................5

*CPS Energy v. Elec. Reliability Council of Tex.,*
   671 S.W.3d 605 (Tex. 2023) .............................................................12, 13, 14, 16

*Denver v. Denver Union Water Co.,*
   246 U.S. 178 (1918)..........................................................................................6

*In re Enron Corp. Secs. Derivative, & "ERISA" Litig.,*
   No. MDL 1446, 2007 WL 9877975 (S.D. Tex. Dec. 13, 2007) ............................................17

*In re Entergy Corp.,*
   142 S.W.3d 316 (Tex. 2004)...............................................................................12

*In re Entringer,*
   548 F.3d 344 (5th Cir. 2008) ...............................................................................8

*Forest Oil Corp. v. Strata Energy, Inc.,*
   929 F.2d 1039 (5th Cir. 1991) ...............................................................................2

*Fortune Prod. Co. v. Conoco, Inc.,*
   52 S.W.3d 671 (Tex. 2000)................................................................................10

*In re IFS Fin. Corp.*,
    417 B.R. 419 (Bankr. S.D. Tex. 2009) ................................................................8

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
    920 F.3d 890 (5th Cir. 2019) ...........................................................................10

*Joslin Mfg. Co. v. Providence*,
    262 U.S. 668 (1923) ...........................................................................................6

*Kimball Laundry v. United States*,
    338 U.S. 1 (1949) ...............................................................................................6

*L. Craddock & Co. v. Wells Fargo Co. Express*,
    125 S.W. 59 (Tex. 1910) ....................................................................................7

*LightSquared LP v. SP Special Opportunities LLC* (*In re LightSquared Inc.*),
    511 B.R. 253 (Bankr. S.D.N.Y. 2014) ...............................................................9

*Lordstown Motor Corp. v. Hon Hai Precision Indust. Co.* (*In re Nu Ride Inc*),
    No. 23-10831, 54 (Bankr. D. Del. Aug. 1, 2024) ..............................................9

*Mitchell v. United States*,
    267 U.S. 341 (1925) ...........................................................................................6

*Nichols v. Enterasys Networks, Inc.*,
    495 F.3d 185 (5th Cir. 2007) .............................................................................2

*Omaha v. Omaha Water Co.*,
    218 U.S. 180 (1910) ...........................................................................................6

*Omnia Commercial Co. v. United States*,
    261 U.S. 502 (1923) ...........................................................................................6

*Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*,
    546 S.W.3d 133 (Tex. 2018) ............................................................................12

*Phillips v. ERCOT* (*In re Entrust Energy*),
    101 F.4th (5th Cir. 2024) ........................................................................ *passim*

*Signature Indus. Servs., LLC v. Int'l Paper Co.*,
    638 S.W.3d 179 (Tex. 2022) ..............................................................................6

*In re Supreme Beef Processors, Inc.*,
    468 F.3d 248 (5th Cir. 2006) (en banc) ...........................................................16

*United States ex rel. Tenn. Valley Auth. v. Powelson*,
    319 U.S. 266 (1943) ...........................................................................................6

*Trice v. Pearland Indep. Sch. Dist.*,
    No. 3:19-CV-00286, 2020 WL 1557750 (S.D. Tex. Mar. 16, 2020), *R. & R. adopted*, No.
    3:19-CV-00286, 2020 WL 1667748, at *1, n.8 (S.D. Tex. Apr. 1, 2020) ..............................10

*United States v. General Motors Corp.*,
    323 U.S. 373 (1945)............................................................................................................6

*United States v. Petty Motors Co.*,
    327 U.S. 372 (1946)............................................................................................................6

*Valero Transmission Co. v. Mitchell Energy Corp.*,
    743 S.W.2d 658 (Tex. App.—Houston [1st Dist.] 1987, no writ)............................................3

*West Tex. Mun. Power Agency v. Republic Power Partners, L.P.*,
    428 S.W.3d 299 (Tex. App.—Amarillo 2014) .......................................................................16

*Wilhite v. Harvey*,
    861 F. App's 588, 591 (5th Cir. 2021).................................................................................10

**Rules**

Fed. R. Civ. P. 8(d)(2).............................................................................................................9

Fed. R. Civ. P. 12(b)(6)...........................................................................................................9

**Statutes**

16 TEX. ADMIN. CODE § 22.251 ...........................................................................................12, 14

16 TEX. ADMIN. CODE § 22.251(a)...........................................................................................14

16 TEX. ADMIN. CODE § 25.43(o)(2)..........................................................................................5

TEX. GOV'T CODE § 2001.176(b).........................................................................................12, 14

TEX. UTIL. CODE §§ 11.007(a), 15.001..................................................................................12, 14

TEX. UTIL. CODE § 39.151(j) .................................................................................................11

**Other Authorities**

1 EPSTEIN *ET AL.*, BANKRUPTCY §§ 6–7 (1992). ........................................................................8

Electric Reliability Council of Texas, Inc. ("ERCOT") files this Reply in Support of its Second Motion to Dismiss and for Abstention.

## I.   PRELIMINARY STATEMENT

1.     Griddy has the burden to show this Court its claims are plausible despite its insufficient pleadings and the legal flaws in its complaint.

2.     Griddy's contract claim distorts the terms of the contract under which it seeks relief. A plain reading of the SFA's force majeure provision, in connection with the Protocols, confirms ERCOT was permitted to terminate Griddy's rights as a market participant in the event of a Payment Breach. Importantly, Griddy does not dispute it committed a Payment Breach. Griddy made no attempt to perform once the purported force majeure events ended, and Texas law does not permit a breaching party to hide behind a force majeure clause indefinitely. Moreover, Griddy's alleged damages are foreclosed both by ERCOT's statutory immunity and the SFA.

3.     Additionally, Griddy pleaded itself into a complete defense to its preference and disallowance claims by pleading its claims are subject to the earmark doctrine. Griddy cannot sustain either cause of action. Griddy also cannot sustain its equitable claims because allegations of a mere breach of contract do not state a claim for equitable subordination. No attempted revisions to its pleadings can be properly raised in Griddy's response to overcome this deficiency.

4.     In any event, just as it did earlier in these proceedings pursuant to the Fifth Circuit's direction in multiple similar cases, the Court should abstain. The Supreme Court of Texas and Fifth Circuit both require abstention under *Burford*.

5.     Finally, the Court should, consistent with the Supreme Court of Texas, find ERCOT immune under state law. ERCOT retains immunity from liability with respect to Griddy's state-

1

law non-contract claims. Griddy does not address *Supreme Beef*, under which federal courts find immunity when a state would find the same entity immune under similar claims.

## II.    ARGUMENT AND AUTHORITIES

**A.    The Court should dismiss Griddy's breach of contract claim.**

   *i.    The Court can construe the SFA based on its plain terms.*

6.    Griddy argues the force majeure provision should be construed against ERCOT because ERCOT drafted the SFA and offered it to Griddy on a "take-it-or-leave-it basis."[1] But "[w]hen a contract is unambiguous, the rule of construing a contract against its drafter does not apply."[2] Rather, "a contract generally is construed against its drafter only as a last resort—i.e., after the application of ordinary rules of construction leave a reasonable doubt as to its interpretation."[3] Because neither Griddy nor ERCOT contends the SFA is ambiguous,[4] the Court can and should construe the force majeure provision according to its plain, unambiguous terms. Those terms do not afford Griddy the relief it seeks.

   *ii.    Griddy fails to plead it is entitled to relief under the force majeure provision of the SFA.*

7.    Griddy did not plausibly plead a force majeure event because it has not and cannot establish its "performance was prevented by the occurrence" of the Storm or the PUCT Orders.[5]

---

[1] Resp. at 4. Griddy cites no support for this assertion and ignores the SFA is itself a Protocol. *See* Protocols § 22A.

[2] *Autobond Acceptance Corp. v. Progressive N. Ins. Co.*, 76 S.W.3d 489, 493 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

[3] *Forest Oil Corp. v. Strata Energy, Inc.*, 929 F.2d 1039, 1043 (5th Cir. 1991).

[4] *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) ("Again, his arguments hold no water for several reasons, not the least of which is that under Texas state law, a person who wishes to argue contract ambiguity must affirmatively plead it, or else the argument is waived.").

[5] Protocols § 2.1; Mot. at 9–10.

Griddy accuses ERCOT of "graft[ing] on the additional requirement that the event is 'unexpected,'"[6] while itself claiming (with no legal support) that it must do no more than establish the Storm and the PUCT Orders are but-for causes of its failure to pay.[7] Both the Protocols' definition of Force Majeure Event and case law establish an event must prevent performance.[8] Griddy has not pleaded this and appears to concede neither the Storm nor the PUCT Orders "physically render[ed] Griddy" unable to pay its invoices.[9]

8.      Nonetheless, Griddy's claim must be dismissed. First, Griddy seems to concede ERCOT did not terminate the SFA but "terminat[ed] Griddy's right to do business as a REP."[10] Griddy argues ERCOT draws a "false distinction between the formal termination of the SFA and revocation of Griddy's rights to participate in the ERCOT market."[11] Griddy supports this argument by claiming Protocol § 16.11.6.1.6, which allows ERCOT to terminate a market participant's rights, "does not say something less than a 'Default' (as defined by the SFA) is sufficient to terminate participation rights."[12] Griddy is incorrect.

---

[6] Indeed, force majeure necessarily implies unforeseeability, and Griddy appears to agree that high prices in a scarcity market are not unforeseeable. *See generally* Resp. at 5–8; *Valero Transmission Co. v. Mitchell Energy Corp.*, 743 S.W.2d 658, 663 (Tex. App.—Houston [1st Dist.] 1987, no writ) ("An economic downturn in the market for a product is not such an unforeseeable occurrence that would justify application of the force majeure provision, and a contractual obligation cannot be avoided simply because performance has become more economically burdensome than a party anticipated.").

[7] Resp. at 6.

[8] *See* Protocols § 2.1; Mot. at 10 & n.48.

[9] Resp. at 6.

[10] *Id.* at 8.

[11] *Id.*

[12] *Id.* at 10.

9. In fact, § 16.11.6.1 references "Payment Breaches" as a ground for terminating a market participant's right to conduct business.[13] The Protocols define a Payment Breach as the "failure of a Market Participant to pay when due any payment."[14] ERCOT is not prohibited from terminating a market participant's rights in the event of a Payment Breach, regardless of whether caused by a force majeure event.[15] On the contrary:

> Notwithstanding the foregoing, a Force Majeure Event does not relieve a Party affected by a Force Majeure Event of its obligation to make payments or of any consequences of non-performance pursuant to the ERCOT Protocols or under this Agreement, except that the excuse from *Default* provided by subsection 8(A)(5) above is still effective.[16]

Thus, the force majeure provision does not excuse a Payment Breach.[17] And nothing in the force majeure section of the SFA limits ERCOT's remedies under the Protocols for a Payment Breach.

10. Second, and relatedly, Griddy's argument that its failure to pay ERCOT results from a force majeure event is further diminished by the fact that Griddy made no attempt to cure its payment breach since the purported force majeure events concluded.[18] Both this Court and Texas courts agree that, even assuming a force majeure event excuses payment, it does not excuse

---

[13] Protocols §§ 16.11.6.1, 16.11.6.1.6.

[14] *Id.* § 16.11.6(3); *see also* SFA § 8(A)(1).

[15] *See* Protocols § 16.11.6.1.6.

[16] SFA § 8(C)(2) (emphasis added); *id*. § 8(B)(1) (discussing "ERCOT's Remedies for Default"); *see also Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 857 (5th Cir. 1983) ("'Notwithstanding the foregoing' means notwithstanding all of the foregoing, including" other contract requirements).

[17] *See id.* § 8(C).

[18] Am. Compl. ¶¶ 34–35 ($9,000/MWh pricing lifted on February 19, 2021); *see also id.* ¶ 49 (pleading that ERCOT removed Griddy's rights on February 26, 2021); *id.* ¶ 54 ("Griddy filed for bankruptcy on March 15, 2021.").

4

payment indefinitely.[19] For example, in *BB Fit*, the Dallas Court of Appeals held that while COVID-19 and associated emergency stay-at-home orders may have given a hair salon extra time to pay its rent, the lease's force majeure clause *did not* excuse the salon from paying rent when the government's emergency order expired.[20]

11.     Griddy's position is apparently that when a natural disaster or government order affects a business, that business is excused from paying its bills for some untold amount of time. This position not only makes no sense, but it is also not supported by the law, the SFA, or the Protocols.[21]

     *iii.*     *Griddy's claims for damages to its loss of business value are foreclosed by the SFA and ERCOT's immunity for such claims.*

12.     Griddy attempts to avoid ERCOT's immunity for damages associated with transitioning a customer to a POLR by arguing ERCOT has somehow waived this immunity when it allegedly waived immunity from suit and liability.[22] As an initial matter, Griddy cites no legal or factual reason that the Court should determine ERCOT has waived any immunity. In fact, glaringly absent from Griddy's argument is reference to *Entrust*, which held that ERCOT's immunity under the relevant PUCT regulation is "*absolute.*"[23] Griddy also claims its asserted

---

[19] *In re CEC Entertainment, Inc.*, 625 B.R. 344, 354 (Bankr. S.D. Tex. 2020) (Isgur, J.) "[T]he force majeure clause does not excuse nonpayment of rent when [debtor] lacks funds or is unable to tender sums due under the lease," yet "[t]hat is exactly what [debtor] attempts to do today."); *BB Fit, LP v. EREP Preston Trail II, LLC*, No. 05-22-00682-CV, 2023 WL 7401501, at *5-6 (Tex. App.—Dallas Nov. 9, 2023, no pet.).

[20] *BB Fit*, 2023 WL 7401501, at *6.

[21] *See* SFA § 8(C)(1) ("If, due to a Force Majeure Event, either Party is in breach of this Agreement with respect to any obligation hereunder, such Party shall take reasonable steps, consistent with Good Utility Practice, to remedy such breach.").

[22] Resp. at 11.

[23] *Phillips v. ERCOT* (*In re Entrust Energy*), 101 F.4th, 369, 393 (5th Cir. 2024) (emphasis added) (citing 16 TEX. ADMIN. CODE § 25.43(o)(2)).

damages do not result from ERCOT's transition of Griddy's customers but from ERCOT's purported breach of the SFA. ERCOT's immunity, however, applies whether Griddy's claim arises under "tort, contract, or any other theory of legal liability."[24]

13.    Moreover, Griddy confirms its damages are "loss of its business as a going concern" resulting from ERCOT's purported breach.[25] The SFA forecloses these damages.[26] Griddy would like this Court to rely on a handful of cases, most of which are about 100 years old, to find that loss of going concern value is not a consequential damage.[27] Griddy's cases are instead inapposite, each involving situations where the government actually *takes* the plaintiff's business.[28] And, in any event, the Court should rely upon the recent case law that holds loss in value of business is a consequential damage.[29] Moreover, Griddy does not show how the remedy it seeks is not prohibited by the SFA.[30] The Court should dismiss Griddy's claims premised on a POLR and consequential damages.

---

[24] *Id.*

[25] Resp. at 11.

[26] SFA § 9(A) ("Neither party is liable to the other for any special, indirect, punitive, or consequential damages[.]").

[27] Resp. at 12–13.

[28] *Denver v. Denver Union Water Co.*, 246 U.S. 178 (1918) (federal taking); *Omaha v. Omaha Water Co.*, 218 U.S. 180 (1910) (municipal taking); *United States v. Petty Motors Co.*, 327 U.S. 372 (1946) (federal taking); *United States v. General Motors Corp.*, 323 U.S. 373 (1945) (federal taking); *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266 (1943) (federal taking); *Mitchell v. United States*, 267 U.S. 341 (1925) (federal taking); *Joslin Mfg. Co. v. Providence*, 262 U.S. 668 (1923) (municipal taking); *Omnia Commercial Co. v. United States*, 261 U.S. 502 (1923) (federal taking); *Kimball Laundry v. United States*, 338 U.S. 1, 8–9, 14–15 (1949) (federal taking).

[29] *E.g.*, *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 192 (Tex. 2022) (acknowledging that a decrease in company's value is a consequential damage).

[30] SFA § 8( B)(2); s*ee Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC,* 572 S.W.3d 213, 231 (Tex. 2019) ("Limitation-of-liability clauses, however, are generally valid and enforceable.").

iv.    *That the Legislature outlawed Griddy's business model is dispositive of Griddy's contract claim.*

14.    Griddy admits the Legislature outlawed its business model.[31] It nonetheless argues its contract claim should not be dismissed because contract damages are measured at the time of breach and because the Legislature changed the law in response to Griddy's bankruptcy.[32] Neither fact is relevant. A plaintiff cannot recover damages on an illegal contract, regardless of when those damages are measured, even if the law change occurs *after* the purported breach.[33]

**B.    Griddy pleaded a complete defense to its preference and disallowance claims.**

15.    Griddy states ERCOT's "arguments vaguely suggest that Griddy has not met its pleading burden" when it comes to its preference and disallowance claims.[34] This fundamentally misunderstands the point: even if Griddy properly pleaded both claims, it also pleaded a full and complete defense to these claims under the earmark doctrine.[35] Griddy describes itself as a "pass-through" responsible for "through-putting" ERCOT-earmarked wholesale electricity funds, profiting only from its subscription fees.[36]

---

[31] Resp. at 14–15.

[32] *Id.*

[33] *L. Craddock & Co. v. Wells Fargo Co. Express*, 125 S.W. 59, 60 (Tex. 1910) ("The rule established by the authorities, as we understand it, is that, where one covenants to do an act lawful at the time, and an act of the Legislature is subsequently passed making it illegal to do the act, the covenant of performance is thereby discharged.").

[34] Resp. at 17.

[35] *See* Mot. ¶¶ 40, 43; *see also* SFA § 8(B)(1) ("In the event of Participant's bankruptcy, Participant waives any right to challenge ERCOT's right to set off amounts ERCOT owes to Participant by the amount of any sums owed by Participant to ERCOT, including any amounts owed pursuant to the operation of the Protocols.").

[36] Am. Compl. ¶¶ 24–25 (describing the fund as earmarked for ERCOT's wholesale electricity); *id.* at 2 ($9.99 subscription fee only profit).

Case 22-03315   Document 47   Filed in TXSB on 02/07/25   Page 13 of 23


16.     "The earmarking doctrine recognized by the Fifth Circuit, is based on the concept that control and possession rather than bare legal title determine the true owner."[37] "The earmarking doctrine holds that funds are not property of the estate, even if the debtor held them in an account in the debtor's name, if the funds were intended to be transferred to a non-debtor third party and the debtor never exercised control or possession over the funds."[38] Griddy earmarked the cost of wholesale electricity for ERCOT's behalf—not as part of its profit model.[39] Simply put, Griddy pleaded a complete defense to its preference and disallowance claims, and thus these claims should be dismissed.[40]

**C.     Griddy fails to plead control sufficient to sustain a claim for equitable subordination.**

17.     Allegations of a mere breach of contract are insufficient to sustain a claim for equitable subordination. Griddy relies on *Bailey Tool & Manufacturing Co.* for the premise that a creditor driving a debtor into insolvency is a sufficient basis to claim equitable subordination.[41] That is not *Bailey Tool*'s holding. Rather, the court found "Republic controlled virtually every major component of the Debtors' business":

- Republic paid the Debtors' employees directly;
- Republic decided which employees would be paid;
- Republic decided which employees were 'absolutely necessary;'

---

[37] *In re IFS Fin. Corp.*, 417 B.R. 419, 435–36 (Bankr. S.D. Tex. 2009) (Isgur, J.).

[38] *Id.*

[39] *See In re Entringer*, 548 F.3d 344, 347 (5th Cir. 2008) (when the debtor lacks "dispositive control over" the funds and could not have "paid them to anyone, the money is treated as having belonged" to the recipient "for the purposes of preference law whether or not she actually owns it.") (citing *In re Southmark Corp.,* 49 F.3d 1111, 1116 n.17 (5th Cir. 1995); 1 EPSTEIN *ET AL.*, BANKRUPTCY §§ 6–7, at 522 (1992)).

[40] *See also* SFA § 8(B)(1) ("In the event of Participant's bankruptcy, Participant waives any right to challenge ERCOT's right to set off amounts ERCOT owes to Participant by the amount of any sums owed by Participant to ERCOT, including any amounts owed pursuant to the operation of the Protocols.").

[41] Resp. at 15; No. 16-30503-7 (Bankr. N.D. Tex. Dec. 23, 2021).

8

- Republic ordered layoff of employees;
- Republic hired security personnel and installed cameras at the Debtors' facility;
- Republic required the Debtors' vendors to enter into 'Three Party Payment Agreements,' under which Republic imposed terms on the vendors;
- Republic paid the Debtors' vendors directly;
- Republic determined when and what raw materials the Debtors purchased; and
- Republic controlled the Debtors' purchase of basic business supplies.[42]

18.     Nothing in Griddy's complaint approaches the "total control" described in *Bailey Tool* or the Fifth Circuit's control requirements to allege an equitable subordination claim.[43] Griddy pleaded "ERCOT exercised substantial control over Griddy's assets" but pleaded neither that ERCOT controlled Griddy itself nor any facts to demonstrate how, if at all, ERCOT had control over Griddy's funds.[44]

19.     Griddy also relies on two out-of-jurisdiction cases to support the contention a mere breach of contract warrants equitable subordination; neither case supports the proposition.[45] Griddy has not pleaded bad faith, fraud, or any other bad acts to sustain a plausible claim of equitable subordination. The Court should dismiss this claim.

**D.     Griddy's alternative equitable claims are not plausible.**

20.     Though Griddy may be entitled to plead alternative relief under Federal Rule of Civil Procedure Rule 8(d)(2), Griddy's claims must still be plausible to survive dismissal under Rule 12(b)(6). Even as an alternative theory, Griddy's claims for unjust enrichment, assumpsit, and money had and received are insufficient. Griddy cannot argue the SFA does not govern this

---

[42] *Id.* at *130.

[43] *Id.* at *130–31.

[44] *See generally* Am. Compl. ¶¶ 82–83.

[45] *See Lordstown Motor Corp. v. Hon Hai Precision Indust. Co.* (*In re Nu Ride Inc*), No. 23-10831, 54 (Bankr. D. Del. Aug. 1, 2024) (requiring "breach of contract *in bad faith*" (emphasis added)); *LightSquared LP v. SP Special Opportunities LLC,* (*In re LightSquared Inc*.), 511 B.R. 253, 348 (Bankr. S.D.N.Y. 2014) ("In commercial cases, the proponent of equitable subordination must demonstrate . . . a substantial breach of contract and advantage-taking by the creditor.").

dispute. Five of Griddy's six causes of action are based on the SFA.[46] Likewise, both ERCOT and Griddy agree a valid contract—the SFA—governs this dispute.[47] The existence of "a valid, express contract [which] covers the subject matter of the parties' dispute" precludes Griddy's recovery under any alternative theory rooted in the absence of any such contract.[48]

21.     To the extent Griddy attempts to amend its pleading in its Response, by pointing to the actions of ERCOT allegedly underpinning its equitable claims for relief, Griddy cannot do so. "[I]t is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time."[49] "To the extent [Plaintiff] seeks to buttress the operative complaint with statements from [its] response to Defendant['s] motion to dismiss. . . [its] attempt to do so fails. New factual allegations in briefs are not appropriately considered on a motion to dismiss—our focus is on the allegations and materials referred to in the complaint itself."[50] In sum, ERCOT is entitled to dismissal on Griddy's alternative equitable claims.

**E.     This Court should abstain under *Burford*.**

22.     To avoid *Burford* abstention—which the Fifth Circuit has twice ordered for similar claims arising out of ERCOT's actions in the wake of Winter Storm Uri—Griddy misrepresents the nature of Texas's comprehensive electric-regulatory scheme to make this case look like a one-

---

[46] Am. Compl. ¶¶ 56–88.

[47] *See, e.g.*, *id.* at 2–3, ¶¶ 36–49, 53; Mot. ¶¶ 2, 9–10, 20–32; 37, 47–51.

[48] *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

[49] *Trice v. Pearland Indep. Sch. Dist.*, No. 3:19-CV-00286, 2020 WL 1557750 (S.D. Tex. Mar. 16, 2020), *R. & R. adopted*, No. 3:19-CV-00286, 2020 WL 1667748, at *1, n.8 (S.D. Tex. Apr. 1, 2020) (citing *Diamond Beach Owners Ass'n v. Stuart Dean Co.*, No. 3:18-CV-00173, 2018 WL 7291722, at *4 (S.D. Tex. Dec. 21, 2018)).

[50] *Wilhite v. Harvey*, 861 F. App's 588, 591 (5th Cir. 2021); *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (holding limited inquiry on dismissal is to complaint, attachments, and judicial notice).

off dispute about a private contract. It is anything but: the SFA is a form agreement that carries the

force of statute; and it is part of the Protocols and thus of Texas law.[51] As such, the SFA is a

central component of the ERCOT regulatory scheme, the interpretation of which must be left to

Texas's chosen fora to ensure the coherence of Texas's state-law scheme. Just like in *Entrust* and

*Just Energy*, *Burford* abstention is warranted here.

     i.     *The SFA is more than a private contract, and the Supreme Court of Texas has already decided that claims that ERCOT breached the SFA belong before the PUCT.*

    23.    The centerpiece of Griddy's argument—that the SFA is somehow outside and apart

from Texas's electric-regulatory scheme—is fundamentally wrong. It is, in reality, a central

component of that regime: a form agreement that binds every market participant to the regulatory

regime by contract.[52]

    24.    Also wrong is Griddy's insistence that the PUCT has no role in interpreting the

SFA. Griddy asserts that there are "no reported cases of breaches of contract with ERCOT going

to the PUC[T] first," claiming that "ERCOT *fails to cite a single one.*"[53] In fact, as ERCOT's

motion pointed out, the Supreme Court of Texas in *CPS Energy* has resolved this question. The

Court held another market participant's claim—that ERCOT's actions during the Storm violated

---

[51] *See* TEX. UTIL. CODE § 39.151(j) (requiring a market participant to comply with "all scheduling, operating, planning, reliability, and settlement policies, rules, guidelines, and procedures established by" ERCOT).

[52] *See* SFA § 5(A) (requiring the market participant to "comply with, and be bound by, all ERCOT Protocols"); *id.* § 8(A)(2) (providing that a breach of the Protocols constitutes a breach of the SFA).

[53] Resp. at 18.

the SFA—was within the PUCT's exclusive jurisdiction.[54] It is telling that Griddy's discussion of *Burford* abstention fails entirely to acknowledge *CPS Energy*, especially because that decision rejected several of the arguments Griddy raises here.[55]

    *ii.*       *This Court should abstain under* Burford*, under* Just Energy *and* Entrust*.*

    25.    <u>This Court would have to delve into unsettled state law and detailed local facts.</u> Griddy's position is that high prices during the Storm constituted a force majeure event. But, as ERCOT has shown and Griddy does not dispute, high prices during scarcity events like the Storm are an essential part of the ERCOT market design.[56] Consequently, whether high prices relieve a market participant of its obligations under the Protocols is a question of grave importance to the overall regime, and it is one that the PUCT and Texas courts ought to answer.

    26.    That these important regulatory questions are presented in a claim for breach of a contract with administrative character is irrelevant, as Griddy's claims show. ERCOT's February 26, 2021, notice informed Griddy that ERCOT would be "exercising its rights to terminate Griddy's rights to conduct activities *under the ERCOT Protocols*."[57] ERCOT additionally "initat[ed] a Mass Transition of Griddy's [customers] pursuant to [the] ERCOT Protocol[s]."[58] In this case, Griddy attempts to use the SFA as a defense against ERCOT's actions under the Protocols, arguing that the SFA stood as a bar to ERCOT's exercise of its regulatory powers. If

---

[54] Mot. ¶ 59, n.140 (citing *CPS Energy*, 671 S.W.3d at 619–20); *see also In re Entergy Corp.*, 142 S.W.3d 316, 323–34 (Tex. 2004); *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 139–40 (Tex. 2018) (holding that contract dispute concerned an issue within the PUCT's exclusive jurisdiction).

[55] *CPS Energy*, 671 S.W.3d at 619–20; 16 TEX. ADMIN. CODE § 22.251; TEX. UTIL. CODE §§ 11.007(a), 15.001; TEX. GOV'T CODE § 2001.176(b)(1).

[56] Mot. ¶ 48.

[57] *Id.*. ¶ 11 (emphasis added).

[58] *Id.*

true, this Court would have to decide whether ERCOT appropriately applied the Protocols with respect to Griddy. This is precisely the type of breach of contract claim that the Supreme Court of Texas held must be resolved within the State's administrative scheme.[59] Moreover, Griddy ignores its own non-contract claims (Count VI), which—if recognized by a court—would have far-reaching effects on the ERCOT regime.[60] The Texas courts should decide whether the State's comprehensive regulatory scheme can coexist with a new class of non-contract, non-statutory claims against ERCOT arising from its regulatory actions with respect to market participants.

27.     <u>The State has powerful interests at stake.</u> Griddy concedes that Texas has an interest in utility regulation, but it insists those interests are not implicated here. But as shown above, the SFA is regulatory in character, and its interpretation in this case will impact ERCOT's rights with respect to every other market participant in future scarcity events.

28.     Griddy nevertheless insists that its force majeure arguments would not "implicate[] any 'pricing and payment procedures.'"[61] But Griddy complains about ERCOT's enforcement of its payment and pricing procedures, and Griddy contends that the force majeure clause bars ERCOT's use of those regulatory powers. Whether that is true here, and in future scarcity events, obviously implicates the ERCOT Protocols, including the SFA.

29.     <u>Griddy's claims threaten the coherence of Texas's regulatory regime.</u> In *Just Energy* and *Entrust*, the Fifth Circuit found this factor satisfied because the market participant's claims would affect every other participant in the ERCOT market, who would be forced under the

---

[59] *CPS Energy*, 671 S.W.3d at 619–20 (holding that the market participant's "claim for breach of the [SFA] involves whether ERCOT properly implemented its protocols, which comes within the PUC's exclusive jurisdiction").

[60] *See* Mot. ¶ 51.

[61] Resp. at 26.

Protocols to bear financial responsibility for Griddy's windfall, thereby placing Griddy on a footing different than every other market participant affected by the Storm and resulting high prices.[62] Griddy does not deny this reality, and its argument that these facts are insufficient runs headlong into *Entrust*'s holding that these circumstances constitute "the exact disruption and crumbling of Texas's uniform system against which *Burford* warns."[63]

30.    <u>Texas has provided a special state forum.</u> As explained above, the Texas Supreme Court's decision in *CPS Energy* conclusively refutes Griddy's assertion that no "rule or regulation within the administrative scheme compel[s] the [SFA] to be reviewed by a Texas court working hand in hand with ERCOT and the PUC[T]."[64] The SFA itself confirms this reality, requiring use of the Protocols' ADR procedures, which specifically apply to claims for breach of the SFA.[65] PUCT rules in turn permit review before that agency, but only once the ADR process has been utilized.[66] Finally, judicial review is then available in Travis County District Court.[67]

---

[62] *Entrust*, 101 F.4th at 391, n.16; *Just Energy*, 57 F.4th at 253.

[63] *Entrust*, 101 F.4th at 391, n.16.

[64] Resp. at 28; *see CPS Energy*, 671 S.W.3d at 619–20 (holding that claim for breach of the SFA was within the PUCT's exclusive jurisdiction, and that judicial review was available).

[65] SFA §§ 8(B)(2)(a), 10(A); Protocols § 20.1(1) (covering "any claim by a Market Participant that ERCOT has violated any law, including any . . . Agreement); *id.* § 2 (defining "Agreement" as any "agreement between ERCOT and a Market Participant using one of the standard form agreements in Section 22, Attachments"); *id.* § 22A (SFA). Notably, contrary to Griddy's theory, Resp. at 23, the PUCT approved the Protocols, confirming the SFA is itself "law."

[66] 16 TEX. ADMIN. CODE § 22.251(a); *id.* § 22.251(c) (requiring a market participant to first utilize the ADR procedures found in the ERCOT Protocols). Griddy's assertion that § 22.251 does not authorize review of claims for breach of the SFA, Resp. at 29, was rejected by *CPS Energy*, which referred such a claim to the PUCT and held that, after the PUCT's ruling, the market participant could "seek[] judicial review of any PUCT rulings on issues underlying those claims," 671 S.W.3d at 620.

[67] TEX. UTIL. CODE §§ 11.007(a), 15.001; TEX. GOV'T CODE § 2001.176(b); *see also CPS Energy*, 671 S.W.3d at 620.

*iii.*      *This Court should stay Counts III and VI and dismiss Count IV.*

31.      Counts III and VI are pure state-law claims, and so every *Burford* factor favors abstention. Consistent with *Entrust*, this Court should grant ERCOT's abstention motion and stay these claims while Griddy pursues its rights via the prescribed administrative process.[68] Griddy concedes that Count IV, though arising under federal law, is entirely "predicated on the breach of contract claim at issue."[69] It is thus entangled in the same skein of state law as Counts III and VI, and at least four of the five *Burford* factors favor abstention. *Entrust* thus requires that this claim be dismissed.[70]

32.      If Griddy's preference and temporary disallowance claims (Counts II and IV) do not depend on state law,[71] ERCOT would not dispute those counts are generally exempt from *Burford* abstention. Nevertheless, this Court retains discretion to stay those claims while the remainder to which *Burford* applies are resolved.

**F.      ERCOT is immune from liability on Count VI.**

33.      In its motion, ERCOT asserted state-law immunity from Griddy's state-law claims. Griddy responds that the federal-law voluntary-invocation principle waives ERCOT's immunity from suit, while ERCOT's entry into a contract with Griddy waives ERCOT's immunity from liability.[72] Even if this is true with respect to Griddy's breach-of-contract claim (Count III),

---

[68] *Entrust*, 101 F.4th at 394–95.

[69] Resp. at 22, n.10.

[70] *Entrust*, 101 F.4th at 394–95.

[71] Resp. at 21–22.

[72] *Id*. at 30.

ERCOT retains its immunity from liability with respect to Griddy's *non-contract* claims for assumpsit, money had and received, and unjust enrichment (Count VI).[73]

34.     Griddy asserts that ERCOT has argued § 106(b) or (c) "only apply to federal claims."[74] That is not remotely ERCOT's argument. Instead, ERCOT's position is that the en banc Fifth Circuit held in *Supreme Beef* that § 106 does not waive a governmental entity's immunity for a claim that would otherwise be barred by substantive state law immunity (i.e., immunity from liability).[75] Griddy fails to respond to this argument.

35.     Finally, Griddy accuses ERCOT of "fail[ing] to disclose that the Fifth Circuit has already addressed this issue and held that 'ERCOT is . . . not entitled to immunity in federal court.'"[76] But *Entrust* concerned whether ERCOT was entitled to *federal-law* immunity under the Eleventh Amendment; the court did not address ERCOT's state-law immunity from suit or liability.[77] And Fifth Circuit precedent confirms that an entity may assert its state-law immunity from state-law claims filed in federal court.[78] Count VI of Griddy's complaint should therefore be dismissed with prejudice.

---

[73] *See, e.g.*, *West Tex. Mun. Power Agency v. Republic Power Partners, L.P.*, 428 S.W.3d 299, (Tex. App.—Amarillo 2014) ("[*I*]*n the context of a suit arising from a breach of contract*, a governmental entity may necessarily waive immunity from liability by entering into the contract . . . ." (emphasis added)); *see also Carty v. State Office of Risk Mgmt.*, 733 F.3d 550, 554–55 (5th Cir. 2013) ("[T]he question of waiver of immunity from liability is governed by state law.").

[74] Resp. at 31.

[75] Mot. ¶¶ 63–64 (citing *In re Supreme Beef Processors, Inc.*, 468 F.3d 248 (5th Cir. 2006) (en banc)); *see also Supreme Beef*, 468 F.3d at 256 (holding that § 106 does not "waive[] immunity from liability").

[76] Resp. at 31 (quoting *Entrust*, 101 F.4th at 387).

[77] *Entrust*, 101 F.4th at 383 (holding that "ERCOT is not entitled to *Eleventh Amendment immunity*" (emphasis added)). *But see* CPS Energy, 671 S.W.3d at 621.

[78] Mot. ¶ 62, n.127 (citing cases).

16

## G.     Leave to amend should be denied.

36.     Griddy seeks leave to amend should the Court grant ERCOT's Motion.[79] If the Court permits Griddy to amend its pleading, it will be the *fourth* time Griddy has attempted to state its claims. Under these circumstances, Griddy has no set of facts entitling it to relief.[80] Griddy has twice now been apprised of most of the deficiencies raised in this Motion. If there were allegations Griddy could bring to cure these deficiencies, Griddy could have and should have raised them by now. Yet, Griddy did not raise them in the Second Amended Complaint and did not explain to the Court in its request for leave what allegations it contends may fix the pleading.[81] Leave to amend should be denied.

## III.     CONCLUSION

ERCOT respectfully requests this Court grant its *Second Motion to Dismiss and for Abstention* (Dkt. 44).

---

[79] Resp. at 32.

[80] *See  Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (leave to amend not required when plaintiff has already pleaded its "best case"); *In re Enron Corp. Secs. Derivative, & "ERISA" Litig.*, No. MDL 1446, 2007 WL 9877975, at *2–3 (S.D. Tex. Dec. 13, 2007) (denying leave to amend pleading for fourth time).

[81] *Blair v. Deutsche Bank Nat'l Tr. Co.*, 609 F. App'x 767, 769–70 (5th Cir. 2015) (dismissal without leave to amend appropriate where plaintiff makes "only general request for leave to amend" and does not "identify" how it would cure the defects in the complaint).

Dated: February 7, 2025           Respectfully submitted,

                                       **MUNSCH HARDT KOPF & HARR, P.C.**

                                       By:*/s/ Jamil N. Alibhai*
                                            Jamil N. Alibhai
                                            Texas Bar No. 00793248
                                            jalibhai@munsch.com
                                            Kevin M. Lippman
                                            Texas Bar No. 00784479
                                            klippman@munsch.com
                                            Jordan R. Curry
                                            State Bar No. 24116242
                                            jcurry@munsch.com
                                            Maddison L. Craig
                                            State Bar No. 24137348
                                            mcraig@munsch.com

                                            4000 Ross Tower
                                            500 N. Akard Street
                                            Dallas, Texas 75201-6659
                                            Telephone: (214) 855-7500
                                            Facsimile: (214) 855-7584

                                            **COUNSEL FOR DEFENDANT**
                                            **ELECTRIC RELIABILITY COUNCIL**
                                            **OF TEXAS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

       I certify that on February 7, 2025, I caused a copy of the foregoing document to be served

via CM/ECF on all counsel of record.

                                            By: *Jamil N. Alibhai*
                                            Jamil N. Alibhai

18