United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 28, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 21-30923 |
| GRIDDY ENERGY LLC, | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |
| | § | |
| RUSSELL F. NELMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 22-3315 |
| | § | |
| ELECTRIC RELIABILITY | § | |
| COUNCIL OF TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Russell F. Nelms, plan administrator of Griddy Energy LLC, sues Electric Reliability Council of Texas seeking damages and equitable relief. Nelms pleads that Winter Storm Uri was a *force majeure* event that prevented ERCOT from exercising its remedies against Griddy. ERCOT asks that the Court abstain under *Burford*. ERCOT seeks dismissal of all claims.

For the reasons stated below, the Court (1) abstains from hearing and abates this proceeding with respect to Griddy's breach of contract claim; (2) dismisses the unjust enrichment claim; (3) denies dismissal of the preference action/disallowance of claim; and (4) grants dismissal of the equitable subordination claim.

# BACKGROUND

## I.   FACTUAL BACKGROUND
### a.  The Parties

Electric Reliability Council of Texas, Inc. ("ERCOT") is a Texas corporation that operates Texas' electrical grid.  The grid supplies power to more than 25 million Texas customers.  ECF No. 43 at 6.  ERCOT is overseen by the Public Utilities Commission of Texas ("PUC").  ECF No. 43 at 2.

Griddy Energy LLC was a Retail Electric Provider in Texas between 2016 and 2021.  ECF No. 43 at 7.  Griddy purchased electricity from ERCOT and provided customers with access to electricity at wholesale prices for a monthly subscription fee of $9.99.  ECF No. 43 at 7.  Griddy's participation in the market was governed by a Standard Form Market Participant Agreement ("SFA") and ERCOT Protocols.

Russell F. Nelms is the court-appointed plan administrator for Griddy, made effective on July 7, 2021 by this Court's Order confirming the Modified Third Amended Plan of Liquidation for Griddy Energy LLC.  ECF No. 43 at 3.  Under the Plan, Nelms is authorized to pursue all claims on behalf of Griddy and its Estate.  ECF No. 43 at 3.

### b.  Winter Storm Uri

In February 2021, Winter Storm Uri brought record snowfall and low temperatures to Texas.  ECF No. 43 at 7.  On the morning of February 15, 2021, the electrical grid was on the brink of collapse.  ECF No. 43 at 8.  ERCOT declared its highest state of emergency, Emergency Energy Alert Level 3, and started mandatory rolling blackouts.  ECF No. 43 at 8.

On the same date, ERCOT recognized that the market energy prices were not reflecting the soaring demand for electricity and the scarcity of electricity supply caused by Uri.  At the time, the price of electricity hovered around $20-$30 per-megawatt-hour during normal conditions.  This was not a normal time.  To address the mismatch

between supply and demand, PUCT directed ERCOT to set the market price of electricity to the regulatory ceiling of $9,000 per-megawatt-hour. ECF No. 43 at 9. The $9,000 price remained in place until February 19. ECF No. 43 at 9.

Griddy invoiced its customers for electricity they purchased during Winter Storm Uri. Due to the price increase, many customers failed to pay the invoices. ECF No. 43 at 10.

On February 22, 2021, ERCOT sent Griddy a Notice of Material Breach and Payment Breach for its (a) failure to satisfy collateral calls issued by ERCOT to Griddy in the amount of about $3.2 million, and (b) failure to pay settlement invoices in the amount of about $2.5 million. ECF No. 44-2. The Notice provides: "[t]his material breach will constitute a Default under the SFA unless the unpaid invoices and collateral amounts detailed above are fully paid by the times required within one (1) Bank Business Day after delivery of this notice." ECF No. 44-2. ERCOT also informed Griddy that it may revoke Griddy's rights as a Market Participant and transition its customers to a Provider of Last Resort pursuant to ERCOT Protocols §§ 15.1.3, 16.11.6.1. ECF No. 44-2.

On the same day, Griddy responded to ERCOT stating that it had fully paid the unpaid invoices and contributed $601,580.83 towards the outstanding collateral amount. Griddy's email further states that Winter Storm Uri was a Force Majeure Event under section 8(C) of the SFA, which provides:

> (1) If, due to a Force Majeure Event, either Party is in breach of this Agreement with respect to any obligation hereunder, such Party shall take reasonable steps, consistent with Good Utility Practice, to remedy such breach. If either Party is unable to fulfill any obligation by reason of a Force Majeure Event, it shall give notice and the full particulars of the obligations affected by such Force Majeure Event to the other Party in writing or by telephone (if followed by written notice) as soon as reasonably practicable, but not later than fourteen (14)

calendar days, after such Party becomes aware of the event. A failure to give timely notice of the Force Majeure event shall constitute a waiver of the claim of Force Majeure Event. The Party experiencing the Force Majeure Event shall also provide notice, as soon as reasonably practicable, when the Force Majeure Event ends.

(2) Notwithstanding the foregoing, a Force Majeure Event does not relieve a Party affected by a Force Majeure Event of its obligation to make payments or of any consequences of non-performance pursuant to the ERCOT Protocols or under this Agreement, except that the excuse from Default provided by subsection 8(A)(5) above is still effective.

ECF No. 44-1 at 9.

As a separate matter from the Force Majeure, Griddy requested ERCOT to "exercise its discretion that a failure to pay when due is neither a Payment Breach nor a Late Payment." ECF No. 44-3 at 3.

On February 26, 2021, ERCOT provided Griddy with official notice that it was terminating Griddy as a Market Participant and transitioning Griddy's customers to a Provider of Last Resort under ERCOT Protocol Section 16.11.6.1.6(1). ECF No. 44-4. The relevant sections provide:

In addition to all other remedies that ERCOT has under any agreement, common law or these Protocols, for Payment Breaches or other Defaults by a Market Participant, ERCOT has the following remedies:

- ERCOT may revoke a breaching Market Participant's rights to conduct activities under these Protocols. ERCOT may also terminate the breaching Market Participant's agreements with ERCOT.
- If a breaching Market Participant is also an LSE then:

o Within 24 hours of receiving notice of the Payment Breach, the Market Participant shall provide to ERCOT all the information regarding its ESI IDs set forth in the ERCOT Retail Market Guide; and

o On revocation of some or all of the Market Participants rights or termination of the Market Participant's agreements and on notice to the Market Participant and Public Utility Commission of Texas (PUCT), ERCOT shall initiate a Mass Transition of the Market Participant's ESI IDs pursuant to Section 15.1.3.1, Mass Transition Process, without the necessity of obtaining any order from or other action by the PUCT.

ERCOT Protocols §§ 16.11.6.1(1), 16.11.6.1.6(1), (3).

Section 16.11.6(7) gives ERCOT "sole discretion, and upon a Market Participant's showing that the failure to pay when due was not within the control of the Market Participant, deem that a failure to pay when due was neither a Payment Breach nor a Late Payment."

## II. PROCEDURAL BACKGROUND

On March 15, 2021, Griddy filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  ECF No. 44 at 5.

On July 7, 2021, the Court entered an order confirming Griddy's third amended plan of liquidation.  Case No. 21-30923, ECF No. 386.

On November 3, 2022, Nelms commenced this adversary proceeding against ERCOT, originally asserting ten causes of action. ECF No. 1.

On December 22, 2022, ERCOT filed its Motion to Dismiss Adversary Proceeding.  On February 1, 2023, the Court held a hearing on the motion to dismiss.  ECF No. 33.

On March 6, 2023, the Court entered an Order partially abstaining under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) on a key

issue and abating the adversary proceeding pending final judgment. ECF No. 36.

On October 18, 2024, Nelms filed his Motion to Reinstate Case. ECF No. 38.  On November 18, 2024, the Court terminated the abatement and set deadlines for the amended pleadings and motions. ECF No. 41.

On December 10, 2024, Nelms filed his Amended Complaint. ECF No. 43.  On January 10, 2025, ERCOT filed its Amended Motion to Dismiss Adversary Proceeding.  ECF No. 44.  On January 31, 2025, Griddy filed its Response.  ECF No. 46.  On February 7, 2025, ERCOT filed its Reply.  ECF No. 47.

On February 13, 2025, the Court held a hearing on the amended pleadings and motions.  ECF No. 51.  The Court took the matter under advisement on the same date.

The parties later filed supplemental briefs.  ECF Nos. 51, 54.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The bankruptcy case was referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

The Court reviews motions under Federal Rule of Civil Procedure 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, the Court will not strain to find inferences favorable to the plaintiff.  *Southland Sec. Corp. v. INSpire Ins. Sol. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Motions to dismiss for failure to state a claim upon which relief can be granted "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)). To avoid dismissal under Rule 12(b)(6), the plaintiff must provide sufficient factual matter to state a claim for relief that is plausible on its face when accepting that factual matter as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard asks for more than "a sheer possibility that the defendant acted unlawfully." *Id.*; *see Lormand*, 565 F.3d at 232 ("[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007))).

## DISCUSSION

Nelms' amended complaint asserts six causes of action: (1) Disallowance of ERCOT's administrative claim, (2) Avoidance of Preference, (3) Recovery for Breach of Contract, (4) Disallowance of Claim per 11 U.S.C. § 502(d), (5) Equitable Subordination of Claim under 11 U.S.C. § 510(c), and (6) Unjust Enrichment. ECF No. 43.

The parties have entered a stipulation rendering Count I moot. For the remaining Counts, ERCOT asserts that the Court should abstain under the *Burford*-abstention doctrine.

This Court has previously abstained from hearing and abated this proceeding with respect to whether ERCOT had authority to set the $9,000 per-megawatt-hour price in response to Uri. The Fifth Circuit held that it was appropriate for a bankruptcy court to abstain from determining the pricing issue in similar suits. *See Phillips v. Elec. Reliability Council, Inc. (In re Entrust Energy, Inc.)*, 101 F.4th 369 (5th Cir. 2024); *Elec. Reliability Council, Inc. v. Just Energy Tex., L.P. (In re*

*Just Energy Grp. Inc.),* 57 F.4th 241 (5th Cir. 2023).  The Supreme Court of Texas later determined that ERCOT had authority to set the $9,000 per-megawatt-hour price.  *See Pub. Util. Comm'n v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 466 (Tex. 2024).

Following *Luminant*, Nelms' claims depend on the issue of whether ERCOT wrongfully exercised its discretion in terminating Griddy's Market Participant rights and initiating a mass transition of Griddy's customers considering the events of Winter Storm Uri.

## I.     THE *BURFORD* ANALYSIS

As a threshold matter, the Court will address whether *Burford* requires abstention from Nelms' claims.

Under the *Burford*-abstention doctrine, "[federal] courts have discretion to abstain from deciding unclear questions of state law arising in complex state administrative schemes when federal court intervention would undermine uniform treatment of local issues." *Elec. Reliability Council, Inc. v. Just Energy Tex., L.P. (In re Just Energy Grp. Inc.),* 57 F.4th 241, 249 (5th Cir. 2023) (quoting *Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022).  Bankruptcy courts may abstain under *Burford* in rare circumstances.  *Id.* ("[A]bstention from the exercise of federal jurisdiction is the exception, not the rule.") (quoting *Colo. River Water Conservation Dist. V. United States*, 424 U.S. 800, 813 (1976)).  The Fifth Circuit has articulated a five-factor test to guide courts in determining whether to abstain under *Burford*.  Federal courts should consider:

> (1) whether the plaintiff raises state or federal clams,
>
> (2) whether the case involves unsettled state law or detailed local facts,
>
> (3) the importance of the state's interest in the litigation,
>
> (4) the state's need for a coherent policy in the area, and
>
> (5) whether there is a special state forum for judicial review.

*Harrison*, 48 F.4th at 339.

### a. Whether the plaintiff raises state or federal claims.

The first factor is whether Nelms' claims are brought under state or federal law. While not dispositive, abstention is favored for claims pled under state law; abstention is disfavored for claims pled under federal law. *See Phillips v. Elec. Reliability Council, Inc. (In re Entrust Energy, Inc.)*, 101 F.4th 369, 388 (5th Cir. 2024).

Here, two of the five causes of action assert state law claims: breach of contract and unjust enrichment. Abstention is favored for those state law claims. Three claims are brought under federal bankruptcy law for which abstention is disfavored.

### b. Whether the case involves unsettled state law or detailed local facts.

The second factor looks at whether the case involves unsettled state law or detailed local facts. Abstention is favored when a claim is sufficiently "entangled in a skein of state law that must be untangled before the federal case can proceed." *See Sierra v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997).

The mere prospect of a federal court confronting unsettled state law does not justify abstention. *Entrust*, 101 F.4th at 389. Rather, this factor weighs in favor of abstention when a federal court is forced to weigh competing local interests and make policy decisions. *See id.*; *Just Energy*, 57 F.4th at 250 ("[this Court] ha[s] found abstention proper when [its] exercise of jurisdiction would involve the federal court in an open-ended 'fairness' inquiry into predominantly local matters or allow the court to second-guess the policy decisions of state regulators.").

ERCOT argues that the issue—whether Winter Storm Uri and the pricing order constitute *force majeure* events that relieve a market participant from its payment obligations under the Protocols and prevents ERCOT from terminating Griddy's rights—is an important and unsettled question of Texas law. ECF No. 44 at 28. Nelms argues

that this issue is a mere breach of contract dispute that does not require the Court to consider local policy interests.  ECF No. 46 at 33.

ERCOT asserts that the SFA is not a routine commercial contract. The SFA is part of the ERCOT protocols and thus part of Texas' regulatory scheme.  The ERCOT market is built to set high prices in times of energy scarcity, which occurred during Winter Storm Uri.  *See Pub. Util. Comm'n v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 454 (Tex. 2024).  ERCOT claims that the Court would "inappropriately 'insert [it]self into a key part of Texas' utility-regulation scheme" by answering whether Uri and the pricing order would trigger the force majeure provision.  ECF No. 44 at 29.

If the issue were merely factual in nature, posited by the parties above, abstention would not be supported under this first factor.  The Court would not need to confront the policy decisions of Texas' energy regulators by determining whether a *force majeure* occurred.  The Court would only need to interpret the provisions of the ERCOT Protocols and apply the law to the facts.  And there is no indication that this Court is ill-equipped to do so here.

However, the issue is more accurately defined as: whether ERCOT wrongfully exercised its discretion in terminating Griddy's Market Participant rights considering the events of Winter Storm Uri. The *force majeure* provision in the SFA only excuses a party from a "Default" but does not provide for whether a "Payment Breach" is excusable by a *force majeure* event.  Section 16.11.6(7) of the ERCOT Protocols gives ERCOT *sole discretion* to determine whether a failure to pay when due was neither a Payment Breach nor a Late Payment "upon a Market Participant's showing that the failure to pay when due was not within the control of the Market Participant."  Section 16.11.6.1(1) gives ERCOT discretion to revoke a Market Participant's rights for Payment Breaches by a Market Participant.

This issue requires adjudication of ERCOT's discretionary actions prescribed by the protocols.  If this Court were to adjudicate this issue,

we would inevitably be engaging in an inquiry of predominately Texas regulatory matters. A federal court's involvement in such an inquiry is what *Burford* seeks to protect against.

This factor supports abstention.

### c. The importance of the state's interest in the litigation.

The third factor considers the importance of the state's interest in this lawsuit. "Abstention is favored 'when a state administrative scheme guards an over-all plan of regulation of vital interest to the general public from federal interference.'" *Entrust*, 101 F.4th at 390 (citing *Grace Ranch, LLP, v. BP America Production Co.*, 989 F.3d 301 (5th Cir. 2021)). Abstention is improper when "countervailing federal policies undermine the primacy of the state's interest, or when the state interests involved are not threatened by the limited relief sought." *Id.*

Texas' interest in utility regulation of its own electrical grid is paramount. *See id.* at 390–91 ("Texas has taken extraordinary steps to isolate its grid from the nation's electricity system—making a conscious decision to exchange reliability for greater independence from federal regulation."). The extent of Texas' interest in its regulatory scheme, including adjudication of disputes between ERCOT and market participants, is well-documented in the Supreme Court of Texas' decision in *CPS Energy v. Elec. Reliability Council*, 671 S.W.3d 605 (Tex. 2023). There, the Supreme Court held that the § 39.151 of the Texas Utilities Code gives the PUC extensive regulatory and adjudicatory authority over ERCOT and its functions. *Id.* at 618 ("Section 39.151 of the Utilities Code constitutes a pervasive regulatory scheme."). This authority requires the PUC to hold ERCOT accountable for performing its operations, functions and duties. *See id.* at 619. Accordingly, the Supreme Court ruled that the pervasive regulatory scheme gives the PUC exclusive jurisdiction over a market participant's claims against ERCOT. *See id.* at 619–20 ("CPS' claim for breach of the Standard Form Market Participant Agreement involves whether ERCOT properly implemented its protocols, which comes within the PUC's exclusive

jurisdiction."). The PUC's exclusive jurisdiction requires a Market Participant to exhaust its administrative remedies before pursuing relief in trial court. *Id.* at 620.

To be sure, CPS Energy's issues were unlike the one presented here. CPS' allegations were directed at ERCOT's failures in implementing its protocols in a way to ensure the integrity of its system, taking reasonable precautions to meet its "load projections" expected by Uri, and correcting an alleged $16 billion overcharge. *CPS Energy*, 671 S.W.3d at 619. The Texas Supreme Court found that these issues fell within the PUC's exclusive jurisdiction.

It is unclear whether Nelms' issue also neatly falls within the broadly defined scope of the PUC's purview. But the Fifth Circuit has held that the interest of a protected regulatory scheme outweighs federal interest. *Entrust*, 101 F.4th at 390 ("However true that is as a matter of substantive bankruptcy law, it is not enough to outweigh Texas's interest in managing its incredibly complex utility scheme."). *CPS Energy* dictates that the scheme includes adjudicating disputes between ERCOT and its Market Participants.

This factor weighs in favor of abstention with respect to the breach of contract and unjust enrichment claims. Nelms' equitable subordination claim is predicated on ERCOT's alleged inequitable conduct in wrongfully exercising its remedies. Because the underlying issue involves a state-law dispute between ERCOT and Griddy, this factor weighs in favor of abstention.

With respect to Nelms' preference action and disallowance of claim, this factor weighs against abstention. The preference action does not rely on resolution of the underlying issue. Because the state's unique interests are not involved, abstention is improper for Counts II, IV.

### d. The state's need for coherent policy in the area.

This factor considers whether "federal resolution of this suit would disrupt [Texas's] efforts to establish a coherent policy for electric

utilities." *Entrust*, 101 F.4th at 391.  Abstention is favored when federal intervention in an ongoing state scheme would cause undue confusion. *See id.* at 391.  Unlike the previous factor, this one does not consider any competing federal interests.  *Entrust*, 101 F.4th at 391.

Deciding the issue—whether ERCOT wrongfully exercised its discretion in terminating Griddy's Market Participant rights and initiating a mass transition of Griddy's customers in light of Uri—would inevitably impact the relationship between ERCOT and other Market Participants that failed to meet its payment obligations during Uri.

A federal court should not adjudicate the discretionary actions— particularly those exercisable in ERCOT's sole discretion— of ERCOT. Such efforts would cause undue confusion when the PUC oversees the actions of ERCOT and its conduct with Market Participants.

This factor supports abstention.

### e. Whether there is a special state forum for judicial review.

"To justify abstention, there must be a forum that offers '[t]imely and adequate state-court review."  *Id.* at 392 (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).  "That review typically includes the ability to appeal agency orders to a state trial court, with available state appellate review, and such review may include initial review by the agency."  *Id.*

It is well-established that there are adjudicatory procedures in place.  Section 10(A) of the SFA provides:

> In the event of a dispute, including a dispute regarding a Default, under this Agreement, Parties to this Agreement shall first attempt resolution of the dispute using the applicable dispute resolution procedures set forth in the ERCOT Protocols.

ECF No. 44-1 at 10.  Section 20 of the ERCOT Protocols provide:

> [T]his Alternative Dispute Resolution (ADR) procedure
> applies to any claim by a Market Participant that ERCOT
> has violated or misinterpreted any law, including any
> statute, rule Protocol, Other Binding Document, or
> Agreement, where such violation or misinterpretation
> results in actual harm, or could result in imminent harm,
> to the Market Participant.  A Market Participant that
> disputes an interpretation of the ERCOT Protocols, an
> Other Binding Document, or an Agreement made by
> ERCOT . . . is not required to follow the ADR procedure
> prior to seeking relief from the Public Utility Commission
> of Texas, or other Governmental Authority.

ERCOT Protocols § 20.1(1).  The PUC may review ERCOT's decision.
PUC. TEX. UTIL. CODE § 39.151(d-4)(6); *Entrust*, 101 F.4th at 380.  The
PUC's decision is then subject to judicial review pursuant to the Texas
Administrative Procedure Act in the Travis County district court or in
the Fifteenth Court of Appeals District.  *Entrust*, 101 F.4th at 380.

Nelms argues that these procedures are not mandatory with
respect to Market Participants.  But this factor does not consider
whether there are procedures a Market Participant *must* exhaust first.
Rather, this factor only considers whether there is an "adequate state
forum."  As discussed, *Entrust* recognizes that there is an administrative
procedure for review of ERCOT's decisions.  *Id.* at 392.

Nelms also argues that § 11 of the SFA allows suits to be brought
in a "federal court located within Travis County, Texas."  ECF No. 44-1
at 11.  But this is not relevant to the *Burford* analysis because it is
merely a venue provision.  ECF No. 51-1 at 2.

Lastly, Nelms argues that there is no adequate state forum for
judicial review because ERCOT has sovereign immunity in state court.
*See CPS Energy v. Elec. Reliability Council*, 671 S.W.3d 605, 628 (Tex.
2023) (holding that ERCOT is entitled to sovereign immunity because it
is an arm of the state).  But this too is not relevant for the *Burford*
analysis.  ERCOT's sovereign immunity is waived for judicial review

suits.  TEX. GOV'T CODE § 2001.171; *see Tex. Dep't of Prot. & Reg. Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 198 (Tex. 2004).

This factor weighs in favor of abstention with respect to Counts III, VI.

*****

The *Burford* factors are not meant to be tallied like a scorecard. *Entrust*, 101 F.4th at 393.  Rather, they serve as guidance to the courts in determining whether the doctrine's underlying principles are implicated.  *Id.* at 394.

For the breach of contract and unjust enrichment causes of action, all five factors favor abstention  The contract claim is stayed pending resolution of state proceedings on the *force majeure* issue.  *See Entrust*, 101 F.4th at 394 (holding that a federal court should stay a cause of action seeking damages when *Burford* abstention is warranted).  The unjust enrichment claim is dismissed.  *Id.* (directing the bankruptcy court to dismiss claims seeking equitable or discretionary relief where *Burford* abstention is warranted).  In weighing its decision, the Court finds the third factor particularly important.  The SFA and ERCOT protocols are part of the state's pervasive regulatory scheme.  The Supreme Court of Texas has held that the PUC, which oversees the regulatory scheme, has exclusive jurisdiction over a Market Participant's claim against ERCOT.  *See CPS Energy*, 617 S.W.3d at 619–20.  Adjudicating these claims here would only pose a threat to Texas' complex state administrative process that *Burford* is meant to protect against.  The state court is a more appropriate forum for these claims.

For Nelms' equitable subordination claim, three of five factors favor abstention.   It is dismissed because it seeks equitable relief and does not state a plausible claim.  *See infra* section II.b.

None of the factors favor abstention for the preference action and disallowance of claim.  Abstention is not warranted for these claims.

## II.   THE BANKRUPTCY CLAIMS
### a.  Preferential Transfer/Disallowance of Claim

Count II seeks to avoid preferential transfers in the amount of $3,088,547.28, which ERCOT allegedly collected from Griddy's account. ECF No. 43 at 13.  Count IV seeks disallowance of ERCOT's claim under § 502(d) based on ERCOT's failure to return the preferential transfer. ECF No. 43 at 14.

ERCOT asserts that these payments are not avoidable as preferential transfers because the earmark doctrine applies.  ERCOT alleges that because Griddy merely passes through wholesale electricity costs to subscribers, any payment is earmarked to ERCOT and is unavoidable.  ECF No. 44 at 25.

Earmarking is "a judicially created exception to the statutory rule" and "must be narrowly construed."  *Campbell v. Hanover Ins. Co. (In re ESA Envtl. Specialists)*, 709 F.3d 388, 394 n.5 (4th Cir. 2013).  The Fifth Circuit has held that the earmarking doctrine to a preference action applies when "all that occurs in a 'transfer' is the substitution of one creditor for another, no preference is created because the debtor has not transferred property of his estate; he still owes the same sum to a creditor, only the identity of the creditor has changed."  *Caillouet v. First Bank & Tr. (In re Entringer Bakeries Inc.)*, 548 F.3d 344, 348 (5th Cir. 2008) (quoting *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1355–56 (5th Cir. 1986)).  The defense is precluded when a debtor can exercise control over the transferred funds in a bank account and when there is no express agreement among the creditors and the debtor.  *See Entringer Bakeries*, 548 F.3d 344, 350 (5th Cir. 2008).

Here, the allegations do not show that ERCOT had any control over Griddy's account where payments from its customers were deposited.  There is also no express agreement that Griddy would use customers' payments to satisfy ERCOT's collateral calls.  ERCOT's argument that earmarking is warranted because Griddy's business is "through-putting" the wholesale cost of electricity is unavailing.

The earmarking doctrine does not apply here.  Nelms may seek summary judgment on these two issues within 21 days of entry of this opinion.

### b.  Equitable Subordination of ERCOT's claim

Count V seeks equitable subordination of ERCOT's claim under § 510(c).  Nelms alleges that ERCOT's wrongful conduct directly caused Griddy's collapse and insolvency.  ECF No. 43 at 15.  The basis of the wrongful conduct is the alleged breach of contract and the mass transition of Griddy's customers.  ECF No. 43 at 15.

Equitable subordination of a claim is an "unusual remedy" reserved for exceptional circumstances.  *In re Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir. 1991).  It serves a remedial rather than a penal purpose by offsetting the specific harm on creditors due to the inequitable conduct.  *Id.*  The Fifth Circuit has established a three-prong test for equitable subordination:

(1) The claimant must have engaged in some type of inequitable conduct;

(2) The misconduct must have resulted to an injury to the creditors or conferred an unfair advantage on the claimant; and

(3) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.

*Id.* at 1465.  It is unclear what constitutes inequitable conduct sufficient for application of the doctrine.  *See id.* at 1467.  But the Fifth Circuit has limited its use to three situations: "(1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors."  *In re U.S. Abatement Corp.*, 39 F.3d 556, 561 (5th Cir. 1994).

Nelms has not pleaded any facts indicating that ERCOT owed fiduciary duties to Griddy, so the first situation is inapplicable.  A mere

contractual relationship is insufficient to give rise to a fiduciary relationship, which requires a relationship of trust.  *See id.*  Nelms has not pleaded facts that ERCOT defrauded Griddy's creditors, so the third situation does not apply.

Equitable subordination hinges on whether ERCOT exercised control over Griddy to the disadvantage of other creditors.  Nelms' only factual basis for asserting that ERCOT controlled Griddy is that it breached its contractual obligations and wrongfully exercised its Payment Breach remedies.  Griddy cites to two cases outside the Fifth Circuit; both of which are inapposite.  In *LightSquared LP v. Special Opportunities LLC (In re LightSquared Inc.)*, the court held that the "proponent of equitable subordination must demonstrate . . . ' a substantial breach of contract and advantage-taking by the creditor." 511 B.R. 253, 348 (Bankr. S.D.N.Y. 2014).  A mere breach of contract is not enough, there must be "inequitable conduct in connection with contractual obligations."  *See id.* at 348.   In *Lordstown Motor Corp. v. Hon Hai Precision Indust. Co. (In re Nu Ride Inc.)*, the Court held that a breach of contract *in bad faith* could be egregious conduct sufficient for an equitable subordination claim.  No. 23-10831, 2024 Bankr. LEXIS 1776, at *53 (Bankr. D. Del. Aug. 1, 2024).

The Court finds that the allegations, even if accepted as true, would not establish that ERCOT acted with bad faith or with inequitable conduct in connection to its contractual obligations.  ERCOT exercised its prescribed remedies under the Protocols.  Without more, there is no indication that ERCOT acted in bad faith to the detriment of other creditors.

The equitable subordination claim is dismissed without prejudice.

## CONCLUSION

A separate order will be entered.

SIGNED 05/28/2025

Marvin Isgur
United States Bankruptcy Judge